**Sharon L.R. MAXWELL,
Plaintiff-Appellee,**

v.

**CITY OF TUCSON,
Defendant-Appellant.**

**No. 85–2561.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 18, 1986.

Decided Oct. 23, 1986.

Ronald J. Stolkin, Karp, Stolkin & Weiss, Tucson, Ariz., for plaintiff-appellee.

Beverly A. Ginn, Asst. City Atty., Tucson, Ariz., for defendant-appellant.

Before FARRIS, HALL, Circuit Judges, and STEPHENS *, District Judge.

STEPHENS, District Judge:

The City of Tucson appeals from the district court's ruling that the City violated Title VII and the Equal Pay Act by engaging in sex-based wage discrimination against the plaintiff Sharon Maxwell. We affirm.

*Background*

Maxwell has been employed by the City since 1972. From January 1976 to August

---

* The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

1978 she held the position of Research Analyst within the Citizen Participation Program.[1] During most of this period, the Program was headed by Mr. Fred Acosta who held the position of Director. The position of Director was classified at a pay grade of Range 50.[2] While Acosta was Director, the City attempted to reduce the pay grade to Range 48. Acosta opposed this attempt and urged the City to increase the pay grade to Range 52. The City decided to maintain the Range 50 classification. On July 7, 1978 Acosta resigned from that position, and Maxwell was temporarily placed in charge of the Program. When Acosta resigned, the City decided to eliminate the position of Director and replace it with a position entitled Administrator. Like the Director, the Administrator was to run the program. However, the Administrator position was assigned a salary level of Range 47.

The City's stated reasons for the change in job classification and pay were that the Program had declined in importance and that the Director's reduced responsibilities did not justify a Range 50 salary for the person running the Program. The City presented the following figures to show the decline in the budget and staff assigned to the Program:

| | Budget | Staff |
|---|---|---|
| 1975–1976 | $299,278 | 19 |
| 1976–1977 | 302,182 | 19 |
| 1977–1978 | 129,821 | 5 |
| 1978–1979 | 94,448 | 4 |

On July 19, 1978 Maxwell was offered the position of Administrator. She refused this offer, and the City began its efforts to fill the position. In early August 1978 she changed her mind and accepted the position.

Maxwell sued the City alleging that the reclassification denied her equal pay for equal work in violation of the Equal Pay Act and Title VII. Following hearings on cross-motions for summary judgment, the district court ruled that Maxwell had established a prima facie case of an Equal Pay Act violation. The case then proceeded to a bench trial to decide the City's argument that Maxwell's lower pay was the result of a merit system or a factor other than sex. The district court found that the City failed to establish either defense and awarded Maxwell back pay and damages.

On appeal, this court determined that it had no jurisdiction over the appeal because of the lack of a final order. The district court had not mentioned the Title VII claim in its disposition. This court therefore remanded the case for resolution of the Title VII claim.

On remand, the district court took no new evidence and issued judgment *nunc pro tunc* on the Title VII claim in favor of Maxwell. The court found that the City's stated reasons for the reclassification were a pretext for sex-based wage discrimination and that the City had intended to discriminate.

Judgment was entered against the City on the Equal Pay Act claim and, in the alternative, on the Title VII claim. The City is now seeking a reversal of the district court's findings on this appeal.[3] That Maxwell established a prima facie case is not disputed.

*Analysis*

The principle of the Equal Pay Act, 29 U.S.C. sec. 206(d)[4], is that employees doing

---

1. The Citizen Participation Program was developed in the early 1970's as part of the Model Cities program and was designed to guarantee citizen input into the allocation of Model Cities funds.

2. However, Acosta received a red-circled salary at his former Range 52 because he had been transferred from a higher paying position in 1975 to the Director position. Red-circling preserves an employee's former higher salary level if he is transferred into a lower paying position.

3. Maxwell also claims for the first time on this appeal that the City committed a tort by reclassifying the position. This argument may not be raised at this stage of the proceedings. *Tomlin v. Board of Trustees*, 586 F.2d 148, 152 (9th Cir.1978).

4. 29 U.S.C. sec. 206(d)(1) states: "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees

equal work should be paid equal wages, regardless of sex. *E.E.O.C. v. Maricopa County Community College District,* 736 F.2d 510, 513 (9th Cir.1984). "To establish a prima facie case of wage discrimination, a plaintiff must show that the employer pays different wages to employees of the opposite sex for substantially equal work." *Id.* "The Equal Pay Act creates a type of strict liability; no intent to discriminate need be shown." *Strecker v. Grand Forks County Social Service Board,* 640 F.2d 96, 99 n. 1 (8th Cir.1980) (en banc). Once the plaintiff establishes a prima facie case, the burden of persuasion shifts to the employer to show that the wage disparity is permitted by one of the four statutory exceptions to the Equal Pay Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. sec. 206(d)(1). "These exceptions are affirmative defenses which the employer must plead and prove." *Kouba v. Allstate Ins. Co.,* 691 F.2d 873, 875 (9th Cir. 1982).

Although discriminatory intent is not part of the employee's prima facie burden under the Equal Pay Act, an employee may rebut the employer's affirmative defenses with evidence that the employer intended to discriminate, and that the affirmative defense claimed is merely a pretext for discrimination. *Id.* at 876. *See also Plem-*

*er v. Parsons-Gilbane,* 713 F.2d 1127, 1137 n. 8 (5th Cir.1983); *Strecker,* 640 F.2d at 101 n. 2. The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has "use[d] the factor reasonably in light of the employer's stated purpose as well as its other practices." *Kouba,* 691 F.2d at 876–77.

Title VII and the Equal Pay Act overlap because both make unlawful differentials in wages on the basis of a person's sex.[5] It is not unusual or improper for a plaintiff seeking equal pay for equal work to allege a violation of both the Equal Pay Act and Title VII. When a Title VII claimant contends that she has been denied equal pay for substantially equal work, as here, Equal Pay Act standards apply. *Kouba,* 691 F.2d at 875.[6] Title VII incorporates the Equal Pay Act defenses, so a defendant who proves one of the defenses cannot be held liable under either the Equal Pay Act or Title VII. *Strecker,* 640 F.2d at 99–100 n. 1, citing *Gunther v. County of Washington,* 623 F.2d 1303, 1311 (9th Cir.1979), *aff'd* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

The City has presented a variety of challenges to the district court's findings, but because Equal Pay Act standards apply to both claims in this case the dispositive issue is whether the City established a defense to Maxwell's claims. If the City can establish a defense, it prevails; if it cannot, Maxwell prevails.

in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

**5.** Section 703(a) of Title VII of the Civil Rights Act of 1964 makes it unlawful for

an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" or to "limit, segregate, or classify his employees or applicants" because of sex. 42 U.S.C. sec. 2000–2(a). The coverage of Title VII is much broader than that of the Equal Pay Act. As an example, a plaintiff in a sex-based wage discrimination suit who is unable to satisfy the single establishment requirement of the Equal Pay Act may nonetheless state a claim under Title VII. *See Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1465 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986).

**6.** For a recent discussion and analysis of the *Kouba* standard see *Marcoux v. Maine,* 797 F.2d 1100 (1st Cir.1986).

As stated earlier, the City has the burden of proving one of the defenses. "The questions whether ... an employer has sustained its burden of proving one of the exceptions to the Equal Pay Act are factual conclusions ... subject to the clearly erroneous standard of review." *Maricopa County,* 736 F.2d at 513.

■ Turning to the merit system issue, we affirm the district court's holding that the City failed to establish a merit system defense. To establish the existence of a merit system, the City should show "an organized and structured procedure whereby employees are evaluated systematically according to predetermined criteria." *E.E. O.C. v. Aetna Insurance Co.,* 616 F.2d 719, 725 (4th Cir.1980). Additionally, the City should show a "means or order—'system' —of advancement or reward for merit." *Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1188 (11th Cir.1983), cert. denied, 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984).

The City does not base its merit system defense upon a showing of a system of employee evaluations or upon a showing of a system of advancement or reward for merit. Instead, the City argues that its position and pay classification system is a merit system because it operates in compliance with the civil service laws and that the wage differential is a result of the proper operation of this system. A similar argument was rejected by the Sixth Circuit in *Marshall v. Kent State University,* 589 F.2d 255 (6th Cir.1978) (per curiam). In *Marshall,* Kent State argued that its classification of custodial employees in accordance with Ohio civil service laws constituted a merit system defense to Equal Pay Act allegations. The court held that the compliance with civil service laws did not establish a merit system defense and did not preclude a finding that Kent State had violated the Equal Pay Act. *Id.* at 255–56. We agree with the *Marshall* court's conclu-

sion. Whatever the precise contours of the merit system defense, compliance with civil service requirements is not sufficient in and of itself. Some evidence of systematic employee evaluation is necessary. The district court did not clearly err in finding that the City failed to make such a showing.[7]

Having decided that the City failed to establish a merit system defense, it is necessary to address the City's argument that Maxwell's pay differential was due to a factor other than sex. The City contends that Maxwell's lower pay was the result of a job reclassification instituted in accordance with the proper procedures to reflect decreases in staff, budget, and duties. The City argues that this reclassification falls within the factor other than sex defense.

"The factor other than sex exception was intended by Congress to be a 'broad general exception.' ... A primary purpose in adding this and other exceptions was to permit employers to utilize bona fide gender-neutral job evaluation and classification systems." *Maricopa County,* 736 F.2d at 514 (citations omitted). Other circuits have held that a proper job reclassification within the framework of a position and pay classification system qualifies under the factor other than sex defense. *See, e.g., Strecker,* 640 F.2d at 100–03; *Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251 (7th Cir.1985). These cases explain that this defense enables the employer to determine legitimate organizational needs and accomplish necessary organizational changes.

■ The City presented its figures showing the decline in the budget and staff assigned to the program. The City argues that these figures indicate a decrease in the duties and responsibilities of the person in charge of the Program and that Maxwell's lower pay reflects this decrease. Maxwell, however, presented evidence that the

---

7. The City mistakenly relies on *Strecker,* 640 F.2d 96, and *Aetna,* 616 F.2d 719, to support its claim that compliance with civil service laws is sufficient to establish a merit system defense under the Equal Pay Act. Each case was actually decided by analyzing the factor other than sex affirmative defense. *Strecker,* 640 F.2d at 99, 103; *Aetna,* 616 F.2d at 726.

duties and responsibilities of her position had actually increased.

The City argues that the district court erred in finding that it had not established the factor other than sex defense. In deciding this issue, two important points must be considered. First, the City had the burden of proving this defense. Second, this court must apply the clearly erroneous standard of review embodied in Fed.R. Civ.P. 52(a).

> This standard plainly does not entitle a reviewing court to reverse the finding of a trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

Given the conflicting reasons presented to explain Maxwell's lower pay, the district court determined that the City failed to meet its burden of proof on the statutory defense issue. There is nothing in the record which demonstrates that this finding is implausible or illogical. We decline

to second-guess the district court on this finding of fact and hold that it did not clearly err on this issue.[8]

As a final matter, the plaintiff's request for damages and costs pursuant to Fed.R. App.P. 38 is denied. The City's appeal was not frivolous.

For these reasons, the district court's decision is AFFIRMED.

---

**8.** It is not necessary to decide the City's argument that the district court's finding of intent was clearly erroneous. Regardless of whether Maxwell can prove intent, the burden was on the City to prove a defense. The City failed to meet its burden, so it is immaterial whether Maxwell proved intent.