Cora ALDRICH, Plaintiff–Appellant,

v.

RANDOLPH CENTRAL SCHOOL DISTRICT and Cattaraugus County Civil Service Commission, Defendants–Appellees.

No. 335, Docket 91–7566.

United States Court of Appeals, Second Circuit.

Argued Oct. 10, 1991.

Decided May 5, 1992.

Cheryl Smith Fisher, Buffalo, N.Y. (Magavern & Magavern, of counsel), for plaintiff-appellant.

Anne S. Simet, Buffalo, N.Y. (Hodgson, Russ, Andrews, Woods & Goodyear, of counsel), for defendant-appellee Randolph Cent. School Dist.

Dennis V. Tobolski, Little Valley, N.Y., for defendant-appellee Cattaraugus County Civ. Service Com'n.

Before: OAKES, Chief Judge,
NEWMAN and PRATT, Circuit Judges.

OAKES, Chief Judge:

Cora Aldrich appeals from a judgment entered in the United States District Court for the Western District of New York, Richard J. Arcara, *Judge*, granting summary judgment for defendants Randolph Central School District and Cattaraugus County Civil Service Commission on her claims of sex-based wage discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (1988), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1988), and unlawful retaliation for filing a claim with the New York State Division of Human Rights in violation of 42 U.S.C. § 2000e–3(a) (1988). The district court properly granted summary judgment on Aldrich's Title VII claims of sex-based wage discrimination and retaliation. We conclude, however, that the district court erred by holding that defendants' use of the civil service examination and classification system provides a defense to Aldrich's claim under the Equal Pay Act based on the existing record. Accordingly, we reverse in part and remand.

I.

The Randolph Central School District employs cleaners and custodians to maintain the two buildings used by the Randolph Central School System. In making employment decisions, Randolph must comply with local civil service laws administered by the Cattaraugus County Civil Service Commission. The commission establishes job classifications, administers civil service examinations, and prepares eligibility lists for civil service positions.

Cora Aldrich began working as a full-time cleaner in the Randolph Central School District's elementary school in September 1982. The cleaner position is a labor class position. As a result, Randolph may hire anyone it believes can learn to perform the duties of a cleaner in accordance with the job description developed by the commission. All of the cleaners who work in the Randolph Central schools are women.

Aldrich works alongside two male custodians. The custodian position is a competitive position under civil service rules. Applicants for the position must take a civil service examination. Their scores are ranked and placed on an eligibility list. Randolph may only hire custodians from among the top three applicants on the eligibility list. Men and women are equally eligible to apply for custodian and cleaner positions. Custodians are paid higher wages than cleaners.

Aldrich has taken the civil service examination for the custodian position and applied for custodian jobs several times. She has never scored in the top three on the examination, and has never been offered a position as a custodian.

Soon after she began working as a full-time cleaner, Aldrich complained to her supervisor that she was essentially perform-

ing the same work as the custodian on staff at the elementary school. When the elementary school principal refused to reclassify her as a custodian, she filed an unsuccessful grievance contesting her classification. Aldrich then filed a job classification questionnaire with the Cattaraugus County Civil Service Commission in order to have her job duties reviewed.

In February 1985, following her unsuccessful appeal of the commission's determination that she was properly classified as a cleaner, Aldrich filed a complaint with the New York State Division of Human Rights ("NYSDHR") against defendants alleging sex-based wage discrimination because she was performing the work of the male custodians but was classified and paid as a cleaner. After an investigation, the NYSDHR dismissed the complaint.

In September 1985, Aldrich filed another complaint with the NYSDHR and the Equal Employment Opportunity Commission ("EEOC") alleging that Randolph retaliated against her for filing the February complaint when it did not ask her whether she wanted to work overtime on a weekend prior to the opening of school to clean up after a summer asbestos removal project. In July 1987, the NYSDHR dismissed the complaint. In July 1988, the EEOC issued a letter denying her charge and advising Aldrich of her right to sue.

In October 1988, Aldrich filed this action seeking relief against the Randolph Central School District and the Cattaraugus County Civil Service Commission under the Equal Pay Act and Title VII of the Civil Rights Act of 1964 for defendants' alleged sex-based wage discrimination. Aldrich also alleged that Randolph retaliated against her in violation of Title VII for filing a complaint with the NYSDHR.

Upon completion of discovery, defendants moved for summary judgment. On May 8, 1991, the district court granted summary judgment for the defendants, finding as a matter of law that: (1) use of the civil service examination and classification system as a qualification for being hired and paid as a custodian is a complete defense to Aldrich's Title VII claim; (2) the

pay differential between custodians and cleaners was based on a "factor other than sex" under the Equal Pay Act—the civil service examination and classification system; (3) plaintiff's failure to submit any additional proof beyond the allegations in her complaint mandated summary judgment on her retaliation claim. Aldrich appeals from this order and the judgment of the district court.

## II.

Federal Rule of Civil Procedure 56(c) provides that the court shall grant summary judgment when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). In resolving the issues raised on appeal from a grant of summary judgment, "we review the record *de novo* to determine whether there are genuine issues of material fact requiring a trial." *Id.*

## III.

"What we seek is to insure, where men and women are doing the same job under the same working conditions that they will receive the same pay." 109 Cong.Rec. 9196 (1963) (statement of Rep. Frelinghuysen). In 1963, Congress enacted the Equal Pay Act ("EPA") to carry out this broad mandate. The Act prohibits employers from discriminating between employees

on the basis of sex by paying higher wages to members of the opposite sex for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1) (1988).

■ In order to prove a violation of the EPA, a plaintiff must first establish a prima facie case of wage discrimination by demonstrating that: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; (3) the jobs are performed under similar working conditions. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). Once the plaintiff makes out a prima facie case, the burden shifts to the employer to justify the wage differential by proving that the disparity results from: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *see also Corning*, 417 U.S. at 196, 94 S.Ct. at 2229.

The school district argues that the "burden under the Equal Pay Act was simply to show that a factor other than sex accounted for the pay differential. [Appellees] did that when they showed that a qualification for being appointed to the higher paying position was ranking third or higher on the examination."

In granting summary judgment for the defendants on Aldrich's EPA claim, the district court agreed with the school district and the commission, concluding that "[e]ven if the plaintiff could prove that she is being forced to perform the same duties as the male custodians, a proposition for which there is no support in the record, the simple fact is that the pay differential between custodians and cleaners is based on a factor other than sex, *i.e.*, the civil service examination."

Aldrich argues that the district court erred by holding that the civil service classification system is a factor-other-than-sex

for purposes of the EPA and, therefore, a complete defense to the wage differential between Aldrich and her male counterparts.

We have not yet faced the question under what circumstances a civil service classification system qualifies as a factor-other-than-sex.

### A.

We turn first to the district court's conclusion that the civil service classification system followed by the Randolph Central School District provides a complete defense to the wage differential between Aldrich and the male custodians because the classification system is sex-neutral on its face and, therefore, is a factor-other-than-sex.

After tracing the evolution of the EPA through the legislative process, we believe that Congress specifically rejected blanket assertions of facially-neutral job classification systems as valid factor-other-than-sex defenses to EPA claims.

In 1963, the Administration proposed legislation to prohibit wage differentials based on sex. H.R. 3861, 88th Cong., 1st. Sess., *reprinted in Equal Pay Act: Hearings on H.R. 3861 and Related Bills Before the Special Subcomm. on Labor of the House Comm. on Education and Labor*, 88th Cong., 1st Sess. 2–6 (1963). The Administration bill provided defenses to wage differentials based on sex only "where such payment is made pursuant to a seniority or merit increase system which does not discriminate on the basis of sex." *Id.* at 3. The bill was referred to the Special Subcommittee on Labor of the House Committee on Education and Labor, which held hearings on the proposed legislation in March 1963. Industry representatives criticized the defenses provided in the bill, arguing that the exceptions for seniority and merit systems were too narrow and should include exceptions for a broader range of job classification systems. *Id.* at 99 (statement of W. Boyd Owen, Vice President of Personnel Administration, Owens–Illinois Glass Co.), 158–59, 171 (statement of William Miller, Vice President, Stewart

Warner Corp., on behalf of the Chamber of Commerce of the United States).

In response to these and other criticisms from industry, Representative Goodell introduced new equal pay legislation which included the following defenses to wage differentials:

> (i) a seniority system; (ii) a merit system; (iii) *a job classification system;* (iv) a system which measures earnings by quantity or quality of production; (v) reasonable differentiation based on a factor or factors other than sex; or (vi) ascertainable and specific added costs resulting from employment of the opposite sex, or any combination of these exceptions.

H.R. 5605, 88th Cong., 1st Sess. (1963) (emphasis added). This new version was in large part adopted and reported out by the full House Committee on Education and Labor. However, the committee restructured the exceptions and, in doing so, did not include the blanket exception for job classification systems. Instead, H.R. 6060 provided the four affirmative defenses available under current law, including the catch-all factor-other-than-sex defense. H.R. 6060, 88th Cong., 1st Sess., *reprinted in* 109 Cong.Rec. 9211 (1963).

In the report accompanying H.R. 6060, the committee did not directly address why the precise language of H.R. 5605 was not adopted. The committee did explain, however, the role envisioned for job classification systems:

> The bill (H.R. 6060) refers to "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

This language recognizes that there are many factors which may be used to measure the relationships between jobs and which establish a valid basis for a difference in pay. These factors will be found in a *majority* of the job classification systems. Thus, it is anticipated that a *bona fide* job classification program that does not discriminate on the basis of sex will serve as a valid defense to a charge of discrimination.

H.R.Rep. No. 309, 88th Cong., 1st Sess. (1963) (emphasis added), *reprinted in* 1963 U.S.C.C.A.N. 687, 688–89. By this report language, Congress indicated its intention that only a *"bona fide* job classification program" where job-related distinctions underlie the classifications will qualify as a "valid defense to a charge of discrimination."

■ Based on this statutory history, we conclude that employers cannot meet their burden of proving that a factor-other-than-sex is responsible for a wage differential by asserting use of a gender-neutral classification system without more. Rather, Congress intended for a job classification system to serve as a factor-other-than-sex defense to sex-based wage discrimination claims only when the employer proves that the job classification system resulting in differential pay is rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue. *See* Note, *When Prior Pay Isn't Equal Pay: A Proposed Standard for the Identification of "Factors Other Than Sex" Under the Equal Pay Act,* 89 Colum.L.Rev. 1085, 1095–99 (1989); *see also Corning,* 417 U.S. at 198–201, 94 S.Ct. at 2229–30.

This understanding that job classification systems may qualify under the factor-other-than-sex defense only when they are based on legitimate business-related considerations also comports with the general policy goals Congress sought to effectuate by enacting equal pay legislation. Without a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would be sanctioned. Surely Congress did not intend that an employee would lose an EPA claim after making out a prima facie case of wage discrimination simply because, for example, the employer chooses to call one employee a cleaner and another employee a custodian. Representative Frelinghuysen discussed the distinction between bona fide and non-bona fide job classification systems on the House floor during the debate preceding passage of the Equal Pay Act:

The inequities which this legislation seeks to correct are apparent to us all ... As [an] example, the [job] classification names may not match—there would be male packagers and female selectors, nonetheless the work the two groups perform is identical in every respect. This ... would be a violation if the men as a group received more pay than the women. On the other hand, the male packagers may be required to lift the heavy crates off the assembly line and place them on dollies or do various jobs requiring additional physical effort. The women selectors may work on the assembly line, selecting small items, for example, and placing them in crates. This would be a significant difference which would justify a difference in pay.

109 Cong.Rec. 9196 (1963).

Other circuits considering the proper analysis of the factor-other-than-sex defense under the EPA have required employers to prove that a legitimate business reason supports use of the factor. For example, in *Maxwell v. City of Tucson*, 803 F.2d 444, 447–48 (9th Cir.1986), the Ninth Circuit upheld a district court finding that the City of Tucson failed to meet its burden where it classified a woman directing a municipal program at a lower salary level than her male predecessor. The court held that the city failed to demonstrate that the reclassification of the position to the lower level was based on a real change in duties and responsibilities. In doing so, the court explained that "[the factor-other-than-sex] defense enables the employer to determine *legitimate* organizational needs and accomplish *necessary* organizational changes." *Id.* at 447 (emphasis added).[1] In cases involving the Bennett Amendment to Title

VII,[2] courts have required employers to provide a legitimate business reason for the purported factor-other-than-sex. *See EEOC v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir.1988) ("[t]he factor other than sex defense does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason."); *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 876 (9th Cir.1982) ("The Equal Pay Act concerns business practices. It would be nonsensical to sanction the use of a factor that rests on some consideration unrelated to business. An employer thus cannot use a factor which causes a wage differential between male and female employees absent an acceptable business reason.").

For these reasons, we hold that an employer bears the burden of proving that a bona fide business-related reason exists for using the gender-neutral factor that results in a wage differential in order to establish the factor-other-than-sex defense. Additionally, we note that the plaintiff may counter the defendant's affirmative defense by offering evidence showing that the reasons sought to be proved are a pretext for sex discrimination. *See Kouba*, 691 F.2d at 876. "The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has 'use[d] the factor reasonably in light of the employer's stated purpose as well as its other practices.'" *Maxwell*, 803 F.2d at 446 (quoting *Kouba*, 691 F.2d at 876–77).

Accordingly, we believe the district court erred in its interpretation of the EPA. The district court held incorrectly as a matter of law that the defendants satisfied their burden of proving the factor-other-than-sex defense by relying on use of the facially

---

**1.** We disagree with the Eighth Circuit which held *en banc* that an employer satisfies the burden of proving the factor-other-than-sex defense simply by showing that a job classification system operates in gender-neutral manner without any further proof that the classifications are bona fide. *Strecker v. Grand Forks City Social Services Bd.*, 640 F.2d 96, 100–03 (8th Cir.1980), adopted *en banc*, 640 F.2d at 109 (8th Cir.1981). Instead, we agree with Judge Heaney's dissenting opinion in that case. *Id.* at 104 ("[A] governmental unit can specify the education and experience that an employee must have, so long

as the requirements are reasonably related to the job to be filled and are not used as a pretext to avoid paying women equal pay for substantially equal work.").

**2.** The Bennett Amendment incorporated the affirmative defenses to wage discrimination claims under the Equal Pay Act into Title VII. 42 U.S.C. § 2000e–2(h) (1988); *see also County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

neutral civil service examination and classification system because it was literally *a factor other than sex*. As discussed below, the district court should have further required the school district to prove that the job classification system has some grounding in legitimate business considerations.

### B.

Applying the proper legal standard for the factor-other-than-sex defense, we believe that Aldrich's claim survives a motion for summary judgment.

■ At the outset, we believe that Aldrich raises a genuine factual issue on the question whether she performs the same work as the male custodians. The affidavit of her supervisor appears to refute the school district's claim that custodians perform qualitatively different work than cleaners. For example, the school district relies on the affidavit of the former superintendent of the Randolph Central School District in which he states that custodians maintain the boilers—a job "for which formal training is required." Aldrich's supervisor claims, however, that Aldrich has performed some of the same maintenance operations on the boilers as the custodians and, further, that he himself has never attended "boiler school" in order to fulfill these responsibilities. In addition, the former superintendent stated that custodians make repairs on the plumbing; but Aldrich's supervisor stated that Aldrich helps him perform the plumbing repairs. We certainly think that on these facts a reasonable jury could determine that Aldrich performs equal work to the custodians.

We next consider whether the Randolph Central School District and the Cattaraugus County Civil Service Commission can offer use of the civil service examination and classification system as a valid factor-other-than-sex defense.

In our view, use of the civil service examination and the job classification system keyed to examination results can provide a valid factor-other-than-sex defense if defen-

dants prove that the system is bona fide. Specifically, the school district must prove that the exam for custodians and the practice of filling the custodian's position only from among the top three scorers on the exam are related to performance of the custodian's job. If Aldrich were pursuing only a Title VII claim, the school district would not have to establish the job-relatedness of the custodian's exam unless the plaintiff first showed that the exam had a disparate impact. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). But on her Equal Pay Act claim, Aldrich has already made a showing, sufficient to defeat the school district's motion for summary judgment, that she is doing custodian's work and being paid less than the male custodians. If she sustains her burden on that aspect of her Equal Pay Act claim, then she need not make any further showing that the custodian's exam is adversely affecting her because of her gender since the school district asserts the exam results as the basis for the wage differential. Once she shows that she is being paid less than men for doing the same work, the employer can rely on an exam to justify that wage differential only if the employer proves that the exam is job-related.

Since factual issues remain to be resolved with respect to the Equal Pay Act claim, we believe summary judgment was improperly granted. Accordingly, we reverse the district court's dismissal of Aldrich's claim of sex-based wage discrimination under the Equal Pay Act. On remand, the district court might wish to consider the advisability of bifurcating the issues and trying first the issue of whether Aldrich is performing custodian's work.

### IV.

Aldrich also appeals from the granting of defendants' summary judgment motion on her Title VII claim of sex-based wage discrimination. 42 U.S.C. § 2000e–2(a)(1) (1988).[3] Because Aldrich failed to provide

---

**3.** 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

sufficient evidence to support her claim of sex-based wage discrimination under Title VII, we think her claim was properly dismissed.[4]

■ In order to establish a valid claim under Title VII for sex-based wage discrimination, a plaintiff can demonstrate a disparate impact from use of a facially neutral employment practice, *see, e.g. E.E.O.C. v. J.C. Penney Co., Inc.*, 843 F.2d 249 (6th Cir.1988), or present evidence of intentional sex-based wage discrimination. *See County of Washington v. Gunther*, 452 U.S. 161, 178–81, 101 S.Ct. 2242, 2252–54, 68 L.Ed.2d 751 (1981). Aldrich does not offer sufficient evidence which would satisfy either theory of liability.

■ As the district court correctly noted: [Aldrich] has not presented any evidence that the civil service examination for custodian had a significantly discriminatory impact on women. Nor has she provided any statistical data that could be used to determine whether the examination was discriminatory, *i.e.*, how many people took the exam, how many were women, how many women passed, how many women were in the top three and how many women were hired.

Aldrich also fails to offer evidence that the job classification system which is keyed to the examination has a disparate impact on women.

Furthermore, the record contains no evidence of intent to discriminate against women on the part of the school district or the civil service commission by maintaining Aldrich's classification as a cleaner and paying her at the cleaner wage rate. The

civil service commission, following a request from Aldrich for reevaluation of her classification, conducted a review of her duties and concluded that she was properly classified as a cleaner.[5] Randolph believed it could not increase Aldrich's salary to the custodian rate without violating New York civil service law because she did not score in the top three on the civil service examination.

Without evidence of a disparate impact on women from use of the civil service examination and classification system or intentional discrimination, Aldrich's Title VII claim cannot survive a motion for summary judgment.

### V.

■ Aldrich also appeals the granting of summary judgment on her claim that the school district retaliated against her in violation of Title VII. 42 U.S.C. § 2000e–3(a) (1988). In her complaint, Aldrich alleges that in late August 1985, the school district retaliated against her for filing a charge of sex discrimination with the New York State Division of Human Rights because the school district did not ask her whether she wanted to work overtime over a weekend to clean up after asbestos removal.

The school district supported its motion with the affidavit of the Superintendent of Schools for Randolph Central School District during 1985. The superintendent indicated in the affidavit that he asked the head custodian at the high school to ask only the custodial staff whether they wanted to work overtime because he was not aware that cleaners were trained to operate the waxing and buffing machines required for the job. Furthermore, he claims that

---

(1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.

**4.** We do not agree, however, with the district court's conclusion that our decision in *Members of Bridgeport Hous. Auth. Police Force v. City of Bridgeport*, 646 F.2d 55 (2d Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981) requires dismissal of Aldrich's Title VII claim. In *Bridgeport*, we concluded that reliance on a *job-related* civil service examination as a qualification for hiring into a police department provides a complete defense to a Title VII

claim. The job-relatedness of the civil service examination at issue in this case has not been established. However, because Aldrich has not made out a prima facie case of sex-based wage discrimination under Title VII, summary judgment was proper notwithstanding the open factual question regarding the job-relatedness of the civil service examination.

**5.** We note that this evaluation by the civil service commission would be admissible but not dispositive on the issue whether she actually performs equal work to her male custodian counterparts under the Equal Pay Act.

he would have asked Aldrich to perform the work if he had known she was trained to operate such equipment. By submitting this affidavit, defendant offered a "legitimate non-discriminatory reason for the alleged mistreatment." *DeCintio v. Westchester County Medical Ctr.*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

The district court properly granted summary judgment given that Aldrich responded to defendant's motion with only the conclusory allegations contained in her complaint. Without more, summary judgment on Aldrich's retaliation claim was compelled. *See* Fed.R.Civ.P. 56(e); *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

## VI.

For the foregoing reasons, the judgment of the district court granting summary judgment for defendants Randolph Central School District and Cattaraugus County Civil Service Commission on plaintiff Aldrich's claims of sex-based wage discrimination in violation of the Equal Pay Act is reversed. In addition, the judgment of the district court granting summary judgment for defendant Randolph Central School District on plaintiff Aldrich's Title VII claims of sex-based wage discrimination and retaliation is affirmed. Accordingly, we remand this case to the district court.

GEORGE C. PRATT, Circuit Judge, concurring.

I concur in all three holdings of Chief Judge Oakes' opinion: (1) that the district court properly granted summary judgment for the school district on Aldrich's Title VII claim of sex-based wage discrimination; (2) that summary judgment dismissing Aldrich's retaliation claim was proper; and (3) that there is a triable issue defeating summary judgment on Aldrich's claim under the Equal Pay Act. I write only to focus a little more closely on the Equal Pay Act ruling.

As noted in the opinion, Aldrich's claim under the Equal Pay Act is that, as a lower-paid cleaner, she was assigned and performed the same duties as the higher-paid, male, civil service-qualified custodians, and that under the Equal Pay Act this entitled her to recover the differential.

While the school district is entitled to raise the "any other factor other than sex" defense of reliance on the civil service classification system, it must, as the opinion points out, show that the examination-based system and the district's reliance upon it is job-related and bona fide.

As correctly noted in the opinion, "Aldrich raises a genuine factual issue on the question whether she performs the same work as the male custodians", *ante* at 527; this determination requires reversal of the summary judgment. Much of the opinion, however, is taken up with a discussion of the need for the school district to go further than simply asserting its reliance upon the civil service examination and classification system. The opinion stresses the need for the school district to establish as a condition for its "any other factor other than sex" defense that this state-controlled job classification and hiring system is job-related. I have no quarrel with this concept, but am both perplexed at the need for stressing it in the context of this case, and concerned lest it distract the parties and the district court from the heart of this particular dispute.

Under the New York State civil service system, jobs are classified into various categories, examinations are periodically given for each of the classifications, and appointments may be made from any of the three highest-scoring available applicants. *See* N.Y.Civ.Serv.Law § 61 (McKinney Supp. 1992). Municipalities such as the Randolph Central School District are required by law to hire and promote from the civil service lists. *See generally.* N.Y.Civ.Serv.Law § 20 (McKinney Supp.1992). Moreover, the Civil Service Commission goes to great lengths to see that its examinations are job-related. *See* Cattaraugus County Civil Service Commission, *Local Administration of the New York State Civil Service Law* (March 1991). On request, it will analyze a particular position, as it did here, to see if it falls within the classification assigned to it by the governmental employer. It is thus almost unthinkable that on remand, after a reexamination of the civil service's

custodian and cleaner classifications, the district court could possibly conclude that these classifications were not "job-related".

As I view this case, the crux of Aldrich's appeal is not the underlying validity or job-relatedness of the civil service examinations and hiring procedures, because those aspects of the system are not in dispute. Instead, the controversy focuses on the actual practices of the school district in assigning work to Aldrich, as a cleaner, and to her male co-employees, as custodians.

On the remand, when it applies the "any other factor other than sex" defense to the unique problems of this case, the district court must inevitably determine whether in assigning the work the school district actually followed the civil service classifications of "custodian" and "cleaner". If it did not, and instead had Aldrich doing the same work as the higher-paid custodians, then the civil service classification system, as applied to Aldrich in this case, was not bona fide and job-related, and the district's defense would fail.