**Larry FORBES, d/b/a Surgical Specialist**

v.

**JOINT MEDICAL PRODUCTS CORP. and Johnson and Johnson Professional, Inc.**

**No. 3:95cv1980(AHN).**

United States District Court, D. Connecticut.

July 24, 1997.

Richard Jacobs, Jacobs, Jacobs & Shannon, New Haven, CT, Andrew Kasmen, Mitchell Kramer, M. Kramer & Associates, Jenkintown, PA, for Plaintiff.

Gary MacMillan, Scott Lucas, MacMillan & Lucas, Stamford, CT, for Defendants.

### RULING ON DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiff, Larry Forbes ("Forbes"), brings this suit against the defendants, Joint Medical Products Corporation ("JMPC") and Johnson and Johnson Professional, Inc. ("J & J"), for violation of the Connecticut Franchise Act, Conn. Gen.Stat. §§ 42–133e–h (Count One), breach of contract (Count Two), breach of the implied covenant of good faith and fair dealing (Counts Three and Four), interference with prospective economic advantage (Count Five), and tortious interference with contractual relations (Counts Six and Seven).

Now pending before the court is the defendants' Motion for Summary Judgment on

Counts One and Three. For the reasons stated below, this motion [doc. # 21] is GRANTED. Forbes is directed to file an amended complaint within thirty (30) days of this ruling, which shall include *only* Counts Two, Four, Five, Six and Seven.

## STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ...." Rule 56(c); *see Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). The burden of showing that no genuine dispute about an issue of material fact exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In assessing the record to determine whether a genuine dispute as to a material fact exists, the court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.

*See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.) (citation omitted), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

## FACTS

Forbes was, at all times during his relationship with JMPC, an individual resident of Texas, doing business as "Surgical Specialist," with his principal place of business in Houston, Texas. (*See* Defs.' Stat. Mat. Facts About Which There is no Genuine Issue [hereinafter "Defs.' Stat."] ¶ 1.) Until JMPC merged with J & J in 1995, it was a Delaware corporation, authorized to do business in Connecticut, with its principal place of business in Stamford, Connecticut. (*See id.* ¶ 2.)

Prior to its merger with J & J, JMPC sold human joint replacement devices to hospitals and surgeons. (*See* Aff. C. Anthony Whittingham [hereinafter "Whittingham Aff."] ¶ 5.) Its principal product was a total-hip prothesis, for use in partial or total hip joint replacement surgery. (*Id.*) JMPC marketed its products through a network of independent distributors who were assigned a territory and compensated on a commission basis. (*See id.* ¶ 6.) These distributors did not purchase JMPC products for resale. (*See id.* ¶ 7.) Rather, they maintained an inventory of JMPC products on a consignment basis. (*Id.*) When a distributor sold a product, JMPC would bill the customer based on paperwork submitted by the distributor and then pay the distributor a commission. (*Id.*)

In November 1987, Forbes began selling JMPC's prosthetic hip and knee implants to hospitals and surgeons for use in knee and hip replacement surgery. (*See* Aff. Larry D. Forbes [hereinafter "Forbes Aff."] ¶ 2.) These products were particularly well-suited for "revision surgery," in which the product is used to replace a previously inserted implant that has worn out over time. (*Id.*) JMPC initially assigned Forbes to the San Antonio, Texas area, but by 1995, his territory included southeast Texas and southwest Louisiana. (*See* Whittingham Aff. ¶ 8.) Every year, Forbes received new quotas for his

territory and signed a new distributor agreement. (*See id.* ¶ 9.)

According to the 1995 agreement, which Forbes signed on February 9, 1995, JMPC had the right to terminate its relationship with Forbes at any time. It stated:

> The Distributor Agreement is for an indefinite term, is at the will of each of the parties to it, and JMPC has the right to recall all consigned inventory and terminate the Distributor Agreement at any time.

(First Am. Compl. Ex. 1, at 1.) The agreement further provided that, if JMPC merged with another company, it would allow distributors in good standing to continue selling under the current agreement for a specified number of months, depending on how long the distributor had been employed by JMPC. (*See id.* at 47.) The agreement specified that any disputes arising under it would be governed by the law of the State of Connecticut. (*See id.* at 1 (stating that "by entering into the Distributor Agreement the [d]istributor stipulates to jurisdiction of the courts in the State of Connecticut over any dispute between JMPC and the [d]istributor.").)

On April 26, 1995, JMPC notified Forbes that it had agreed to merge with J & J and that, "unless notified otherwise, . . . all . . . present agreements will remain in effect." (First Am. Compl. Ex. B.) Then, by letter dated July 28, 1995, JMPC terminated Forbes's distributor agreement and offered him an additional six months to continue selling its products (i.e. until January 26, 1996). (*See id.* Ex. C.) On September 18, 1995, Forbes commenced this law suit.

### DISCUSSION

In Count One, Forbes alleges that JMPC terminated his alleged franchise agreement without good cause, in violation of Conn. Gen.Stat. § 42–133e. (*See* First Am. Compl. Count One.) In Count Three, he alleges that this termination of the agreement breached the implied covenant of good faith and fair dealing.

The defendants claim that summary judgment should enter as to Counts One and Three because, while Connecticut law governs this dispute, the Connecticut Franchise Act ("the Act") is not applicable to individuals such as Forbes who do not maintain a place of business in Connecticut. The court agrees.

The Act prohibits franchisors from, *inter alia,* canceling or failing to renew a franchise agreement without good cause. *See* Conn. Gen.Stat. § 42–133f(a). However, the Act only applies to a franchise agreement, "the performance of which contemplates or requires the franchisee to establish or maintain a place of business in this state." Conn. Gen.Stat. Ann. § 42–133h (West 1992).

Forbes argues that the provision in the Distributor Agreement which states that Connecticut law shall apply to any disputes arising from the agreement affords him the protections of the Act. He claims that the parties included a clause stating that Connecticut law applied to potential future disputes because they specifically contemplated that the Act would apply to their franchise agreement. However, without deciding whether Forbes was actually a "franchisee" as defined by the Act, a fair reading of both the Act itself and the case law interpreting it lead the court to conclude that only franchisees who have established or maintained a place of business in Connecticut are covered by the Act.

Forbes did not maintain a place of business in Connecticut. Under the parties' agreement, JMPC assigned him a territory in Texas. Thus, the performance of his agreement with JMPC did not "contemplate[] or require[] the franchisee to establish or maintain a place of business in [Connecticut]." Conn. Gen.Stat. Ann. § 42–133h (West 1992). The provision of the agreement which states that Connecticut law applies to future disputes merely governs which state's laws applies to such disputes, not whether the jurisdictional prerequisites of a specific statute have been satisfied. A plain reading of the Act reveals that it does not protect Forbes because his agreement with JMPC did not contemplate or require that he maintain a business in Connecticut.

Furthermore, "it is doubtful that the Connecticut franchise law applies extraterritorially." *H.J., Inc. v. ITT Corp.,* 867 F.2d 1531,

1546 (8th Cir.1989) (citing *Carlos v. Philips Bus. Sys., Inc.*, 556 F.Supp. 769, 777 (E.D.N.Y.1983) (holding the Act does not have extraterritorial effect)). The court can find no authority supporting the proposition that the Act was intended to protect franchisees outside of Connecticut. *Id.* Rather, the Act only applies to Connecticut franchisees who present evidence that they contemplated establishing or maintaining a place of business in Connecticut. *See Auto Parks, Inc. v. Stanley Works*, Civ. A. No. 89–0183, 1990 WL 107587, at *7 (E.D.Pa. July 27, 1990). Without such evidence, the Act is inapplicable. *Id.* Here, the evidence shows, and the parties do not dispute, that Forbes maintained his business and conducted his marketing activity in Texas. *Cf. Chem–Tek, Inc. v. General Motors Corp.*, 816 F.Supp. 123 (D.Conn.1993) (holding that the Act was applicable to an alleged franchisee who maintained its place of business in Connecticut, regardless of where the franchisee focussed its marketing activity). Thus, Forbes is not covered by the Act, and summary judgment must enter as to Count One.

As to Count Three, Forbes argues that "[b]ecause a franchise relationship existed between Forbes and JMPC, JMPC's termination of Forbes in violation of the Franchise Act was also a violation of the covenant of good faith and fair dealing." (Pl.'s Opp. Defs.' Mot. Summ. J. at 23.) He claims that the provisions in the distributor agreement which state that the agreement is terminable, at the will of the parties, or if JMPC merges with another company, do not trump the provisions of the Act which state that a franchise agreement may not be terminated without good cause. (*See id.* at 24.) However, because the court has held that Forbes is not protected by the provisions of the Act, this count must also fail. In addition, there is nothing in the record to contradict the specific provisions of the distributor agreement which allow JMPC to terminate Forbes if it merges with another company. Accordingly, summary judgment must also enter as to Count Three.

### CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment [doc. # 21] is GRANTED. Forbes is directed to file an amended complaint within thirty (30) days of this ruling which shall include *only* Counts Two, Four, Five, Six and Seven.