**The ESTATE OF Charles NOVACK by Paula NOVACK, Admin.**

v.

**R.D.C. REALTY, INC.**

**No. CIV. 3:951068 (HBF).**

United States District Court, D. Connecticut.

March 27, 1998.

Thomas J. Hagarty Jr., Halloran & Sage, Hartford, CT, for Defendant.

John B. Kennelly, Halloran & Sage, Hartford, CT, Paul J. Pacifico, Westport, CT, for Plaintiffs.

## RULING ON MOTION FOR SUMMARY JUDGMENT

FITZSIMMONS, United States Magistrate Judge.

Paula Novack, the Administratrix for the Estate of Charles Novack, brings this wrongful death action against R.D.C. Realty. Plaintiff claims that the decedent suffered electrical shock while repairing the oil burner in the defendant's building and alleges that the defendant failed to keep the premises reasonably safe to guard the decedent, Charles Novack, from the danger of receiving electrical shock. After receiving the shock to his system, it is claimed that the decedent suffered a stroke, caused by his electrocution, and thereafter committed suicide due to the depression stemming from his physical and mental condition. Jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332. Defendant seeks summary judgment on the basis that there exists no genuine issue as to any material fact and it is entitled to judgment as a matter of law.

For the reasons that follow, defendant's Motion for Summary Judgment [Doc. # 35] is DENIED.[1]

*Undisputed Facts*

The underlying facts of this lawsuit are undisputed.[2]

Defendant R.D.C. Realty, Inc is the owner of property known as 29–31 North Main Street,[3] Portchester, New York (the "Property"). In December 1992, R.D.C. Realty had no employees and operated solely through Richard Cuddy, its president and sole shareholder. In December 1992, the commercial space on the first floor was leased to a dry cleaning business known as Commuter Cleaners.

On December 11, 1992, as the result of a severe winter storm, the Byram River flooded the property and totally filled the basement with salt water.[4] The front basement contained an oil-fired furnace which provided heat to the residential apartments. The rear basement contained on oil-fired hot water furnace which provided heat to Commuter Cleaners. After the flood waters receded, Richard Cuddy pumped out both basement sections with a sump pump. By Saturday,

---

1. This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. # 19] on April 6, 1996, with appeal to the Court of Appeals.

2. The following facts are contained in defendant's Statement of Undisputed Material Facts [Doc. # 38] and are not disputed by plaintiff. [*See* Doc. # 41; plaintiff disputes defendant's Statement of Facts at ¶¶ 24–25, 27, 32–38].

3. The property has three stories and a basement. The ground floor is a commercial space and the upper floors contain eight residential apartments.

4. The basement of the property is divided into two sections, one underneath the front portion of the property (the "front basement") and one underneath the rear portion of the property (the "rear basement"). The two sections are separated by a masonry wall.

December 12, both sections of the cellar had been pumped out.

In the process of pumping out the cellar, it was determined that the ConEdison electric meters located in the cellar were severely damaged and, as a result, ConEdison shut off electric power to the property on December 12. The defendant, through Cuddy, used generators to provide power to the sump pumps to complete the removal of the flood waters. The residential tenants were evacuated due to the lack of heat and electricity.

On Sunday, December 13, or Monday, December 14, ConEdison restored temporary electrical service to Commuter Cleaners, which allowed it to resume its business operation. The power was not restored to the rest of the building, including the furnaces in the two basement sections.

On December 14 or 15, Cuddy ran temporary electrical power to the two furnaces using two separate extension cords. The cords ran from an electrical outlet in Commuter Cleaners down into the basement, where they were wired to the furnaces at the emergency "shut off switch" located on the side of each furnace. Cuddy also provided temporary lighting to each basement area with "drop lights" which were plugged into outlets in Commuter Cleaners.

On December 14 or 15, Cuddy called Novack's employer, Westmore Fuel, and requested that a serviceman be sent to repair and start the furnaces. Based on prior flood experience at the property, Cuddy knew that the electrical components of the furnaces, including the burner motor and circulator pumps, would require replacement. Westmore Fuel had provided maintenance and services to defendant's furnaces since 1972.

On December 15, Charles Novack was dispatched by Westmore Fuel to repair and start the furnaces at the defendant's property. Novack arrived at the property in the early afternoon and met Cuddy, who escorted him to the basement and the furnaces. The stairway to the rear basement is located in the rear of the property directly adjacent to the rear entry of Commuter Cleaners. The stairway to the front cellar is located in the front portion of the commercial space occupied by Commuter Cleaners. In order to get to the front basement, it was necessary for Novack to walk through Commuter Cleaners. On December 15, the lights in Commuter Cleaners were on and the dry cleaning business was in operation.

On December 15, Novack parked his truck in the parking lot at the rear of the building and entered through the rear entrance to Commuter Cleaners. Novack walked through Commuter Cleaners to gain access to the front basement. Novack initially worked on the furnace in the front basement and replaced electrical components, including the oil burner motor. Novack started the furnace in the front basement and proceeded to the rear basement.

Fifteen to twenty minutes after commencing work on the rear basement furnace, Novack returned to Cuddy and advised him that he had received a shock and was going back to Westmore Fuel. This conversation took place in mid-afternoon. Novack did not inform Cuddy how he received the shock or what he was doing when he received the shock.

Mrs. Novack testified that, on December 15, her husband told her that "whoever was there, you know, that he was assured that the power was out and he went to fix the oil burner. And he got the shock." She further testified that Novack did not identify who allegedly said this nor did he describe the person. Mrs. Novack testified that her husband told her he got a shock when he went to "do a cut." Novack provided no further explanation to his wife or description of what he was doing or how he was shocked.

On December 15 at approximately 5 p.m., Novack entered the Emergency Room of Norwalk Hospital. The Emergency Room report states that Novack complained of pain and numbness in his right hand and wrist. The report further states that Novack "cut into some live wires."

On December 16, Novack suffered a stoke which left him unable to communicate.

On June 15, 1993, Charles Novack committed suicide.

*STANDARD*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Central School District,* 963 F.2d 520, 523 (2d. Cir.) (quoting *Anderson,* 477 U.S. at 248), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court resolves "[all ambiguities and drawls] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d. at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d. Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the non-moving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992).

*DISCUSSION*

Defendant contends in seeking summary judgment that, under the facts of this case, defendant owed a very limited duty of care to Charles Novack and that following extensive discovery, there is no competent evidence from which a jury could reasonably infer that defendant breached that limited duty of care.[5]

■ It is undisputed that a plaintiff in a wrongful death action has the burden of establishing that the alleged negligence of the defendant was the proximate cause of plaintiff's accident or injury resulting in death. [Doc. # 36 at 5, Doc. # 40 at 5]. "In order to succeed, the claim must be based on more than speculation." *Smith v. Wisch,* 77 A.D.2d 619, 430 N.Y.S.2d 115, 117 (N.Y.App. Div.1980), *appeal denied,* 51 N.Y.2d 709, 434 N.Y.S.2d 1025, 415 N.E.2d 984 (1980). Plaintiff argues that since the decedent is unavailable to testify, she should be held to a lesser degree of proof pursuant to the *Noseworthy* doctrine. *Noseworthy v. City of New York,* 298 N.Y. 76, 78, 80 N.E.2d 744 (N.Y.1948). However, in this case, the *Noseworthy* doctrine does not apply. "[S]ince plaintiff and defendant are similarly situated insofar as accessibility to the facts of the deceased's death is concerned, the *Noseworthy* doctrine has no application." *Lynn v. Lynn,* 216 A.D.2d 194, 628 N.Y.S.2d 667, 668 (N.Y.App. Div.1995) (quoting *Wright v. New York City Housing Auth.,* 208 A.D.2d 327, 624 N.Y.S.2d 144, 147 (N.Y.App.Div.1995)). Here, defendant "did not witness the accident and therefore the parties are on equal footing with respect to knowledge of the occurrence." *Id.* Even if the *Noseworthy* doctrine applied, it would not, however, "shift the burden of proof or eliminate the need for plaintiffs to introduce evidence of a prima facie case." *Id.*

■ To meet the burden of proving a prima facie case, plaintiff must show that decedent's negligence was a "substantial

---

**5.** The parties stipulate that New York law applies. [Doc. # 36, n. 2].

cause of the events which produced the injury." *Id.* "Cases grounded on wholly circumstantial evidence require a showing of sufficient facts from which the negligence of the defendant and the causation of the accident by that negligence can be reasonably inferred." *Thomas v. New York City Transit Auth.,* 194 A.D.2d 663, 599 N.Y.S.2d 127, 128 (N.Y.App.Div.1993); *c.f. Ferraro v. Cinelli,* 193 A.D.2d 409, 597 N.Y.S.2d 71, 72 (1993) (in denying summary judgment, the court stated "in a wrongful death action ... circumstantial evidence may be afforded a greater degree of weight than in cases where there are eyewitnesses to the occurrence."). The law does not require plaintiff to refute every possible cause of the injury; it is enough for plaintiff to show facts and conditions from which the negligence of defendant may be reasonably inferred. *Id; Bernstein v. City of New York,* 69 N.Y.2d 1020, 517 N.Y.S.2d 908, 909, 511 N.E.2d 52 (1987); *Ferraro,* 597 N.Y.S.2d at 72 ("the possibility that an accident may have been caused by factors other than the defendant's negligence does not mandate a conclusion that the plaintiff had failed to make out a prima facie case.").

▆▆▆▆ Defendant argues that there is no basis upon which a jury could conclude that the electric shock was caused by some act or omission on the part of defendant. Plaintiff states that the evidence shows that *"[m]ore likely than not* the shock was due to either poor grounding, the salt water, or reverse polarity." [Doc. #40 at 10 (emphasis in original)]. These conditions, even taken as true, are not all attributable to defendant. On summary judgment, "the record must render the other possible causes sufficiently remote to enable the trier of fact to reach a verdict based upon the logical inferences to be drawn from the evidence, not upon speculation." *Thomas,* 599 N.Y.S.2d at 128.

> A jury verdict must be based on more than mere speculation or guesswork. Where the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery, since he has failed to

prove that the negligence of the defendant caused the injury. If there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible.

*Bernstein,* 517 N.Y.S.2d at 909, 511 N.E.2d 52 (internal quotation marks and citations omitted).

Notwithstanding defendant's argument, it is undisputed that the only electricity coming into the building was supplied to Commuter Cleaners. There was no electricity coming into the meters connected to the furnaces or other parts of the building. It is undisputed that the only power source to the furnace was supplied by Commuter Cleaners by way of the extension cord to the furnace. [Pl.Ex. 1 at 30–32]. The question at trial will not be whether upon cross examination the witnesses will respond that their conclusions are speculative but whether the jury can "reach a verdict based upon logical inferences to be drawn from the evidence, not upon speculation." *Thomas* 599 N.Y.S.2d at 128. There has to be evidence from which the jury can infer that the cause of the shock was attributable to the negligence of the defendant. *Costa v. Colonial Ice Co.,* 124 N.Y.S.2d 103 (N.Y.Sup.Ct.1953) ("While the precise nature of the unfortunate accident may never be known, the plaintiff can recover only by sustaining the burden of proving ... that the accident was sustained by a cause for which the defendant was responsible.").

Accordingly, summary judgment [Doc. #35] is DENIED on the present record without prejudice to renewal at the conclusion of plaintiff's case.