**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AILEEN RIZO,
                    *Plaintiff-Appellee*,

v.

JIM YOVINO, Fresno County
Superintendent of Schools,
Erroneously Sued Herein as Fresno
County Office of Education,
                    *Defendant-Appellant*.

No. 16-15372

D.C. No.
1:14-cv-00423-
MJS

OPINION

Appeal from the United States District Court
for the Eastern District of California
Michael J. Seng, Magistrate Judge, Presiding

Argued and Submitted En Banc December 12, 2017
San Francisco, California

Filed April 9, 2018

Before: Sidney R. Thomas, Chief Judge, and Stephen
Reinhardt[*], M. Margaret McKeown, William A. Fletcher,
Richard A. Paez, Marsha S. Berzon, Richard C. Tallman,

---

[*] Prior to his death, Judge Reinhardt fully participated in this case and authored this opinion. The majority opinion and all concurrences were final, and voting was completed by the en banc court prior to his death.

Consuelo M. Callahan, Mary H. Murguia, Morgan Christen
and Paul J. Watford, Circuit Judges.

Opinion by Judge Reinhardt;
Concurrence by Judge McKeown;
Concurrence by Judge Callahan;
Concurrence by Judge Watford

## SUMMARY[**]

### Employment Discrimination

Affirming the district court's denial of summary judgment to the defendant on a claim under the Equal Pay Act, the en banc court held that prior salary alone or in combination with other factors cannot justify a wage differential between male and female employees.

Overruling *Kouba v. Allstate Ins. Co.*, 691 F.3d 873 (9th Cir. 1982), the en banc court held that an employee's prior salary does not constitute a "factor other than sex" upon which a wage differential may be based under the statutory "catchall" exception set forth in 29 U.S.C. § 206(d)(1). The en banc court concluded that "any other factor other than sex" is limited to legitimate, job-related factors such as a prospective employee's experience, educational background, ability, or prior job performance. By relying on prior salary, the defendant therefore failed as a matter of law

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to set forth an affirmative defense. The en banc court remanded the case to the district court.

Concurring, Judge McKeown, joined by Judge Murguia, wrote that she agreed with most of the majority opinion, particularly its observation that past salary can reflect historical sex discrimination. She wrote that the majority, however, went too far in holding that any consideration of prior pay is impermissible under the Equal Pay Act, even when it is assessed with other job-related factors.

Concurring, Judge Callahan, joined by Judge Tallman, wrote that in holding that prior salary can never be considered, the majority failed to follow Supreme Court precedent, unnecessarily ignored the realities of business, and, in doing so, might hinder rather than promote equal pay for equal work.

Concurring in the judgment, Judge Watford wrote that in his view, past pay can constitute a "factor other than sex," but only if an employee's past pay is not itself a reflection of sex discrimination.

## COUNSEL

Shay Dvoretsky (argued), Jones Day, Washington, D.C.; Michael G. Woods and Timothy J. Buchanan, McCormick Barstow Sheppard Wayte & Carruth LLP, Fresno, California; for Defendant-Appellant.

Daniel M. Siegel (argued) and Kevin Brunner, Siegel & Yee, Oakland, California, for Plaintiff-Appellee.

Jessica Stender (argued), Equal Rights Advocates, San Francisco, California, for Amici Curiae Equal Rights Advocates; 9to5, National Association of Working Women; American Association of University Women; American Association of University Women—California Chapter; ACLU of Northern California and ACLU Women's Rights Project; Atlanta Women for Equality; California Women's Law Center; Feminist Majority Foundation; Legal Aid at Work; Legal Voice; National Organization for Women (NOW) Foundation; National Partnership for Women and Families; National Women's Law Center; Southwest Women's Law Center; Women Employed; and Women's Law Project.

Barbara L. Sloan (argued), Attorney; Margo Pave and Elizabeth E. Theran, Assistant General Counsel; Jennifer S. Goldstein, Associate General Counsel; James L. Lee, Deputy General Counsel; P. David Lopez, General Counsel; Office of the General Counsel, Washington, D.C.; as and for Amicus Curiae Equal Employment Opportunity Commission.

Laurence S. Zakson, Aaron G. Lawrence, and Marianne Reinhold, Reich Adell & Cvitan APLC, Los Angeles, California, for Amici Curiae Make-Up Artists and Hair Stylists Guild, Local 706 of the International Alliance of Theatrical State Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, its Territories and Canada, AFL-CIO, CLC; Costume Designers Guild, Local 892 of the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, its Territories and Canada, AFL-CIO, CLC; and Orange County Managers Association.

Rae T. Vann and Danny E. Petrella, Washington, D.C., for Amicus Curiae Center for Workplace Compliance.

---

**OPINION**

REINHARDT, Circuit Judge:

The Equal Pay Act stands for a principle as simple as it is just: men and women should receive equal pay for equal work regardless of sex. The question before us is also simple: can an employer justify a wage differential between male and female employees by relying on prior salary? Based on the text, history, and purpose of the Equal Pay Act, the answer is clear: No. Congress recognized in 1963 that the Equal Pay Act was long overdue: "Justice and fairplay speak so eloquently [on] behalf of the equal pay for women bill that it seems unnecessary to belabor the point. We can only marvel that it has taken us so long to recognize the fact that equity and economic soundness support this legislation."[1] Salaries speak louder than words, however. Although the Act has prohibited sex-based wage discrimination for more than fifty years, the financial exploitation of working women embodied by the gender pay gap continues to be an embarrassing reality of our economy.

Prior to this decision, our law was unclear whether an employer could consider prior salary, either alone or in combination with other factors, when setting its employees' salaries. We took this case *en banc* in order to clarify the law, and we now hold that prior salary alone or in combination with other factors cannot justify a wage differential. To hold otherwise—to allow employers to

---

[1] 109 Cong. Rec. 8916 (1963) (statement of Sen. Hart).

capitalize on the persistence of the wage gap and perpetuate that gap *ad infinitum*—would be contrary to the text and history of the Equal Pay Act, and would vitiate the very purpose for which the Act stands.

Fresno County Office of Education ("the County")[2] does not dispute that it pays Aileen Rizo ("Rizo") less than comparable male employees for the same work. However, it argues that this wage differential is lawful under the Equal Pay Act. In relevant part, the Act provides,

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) *a differential based on any other factor other than sex.*

---

[2] The defendant is Jim Yovino, the Superintendent of the Fresno County Office of Education. Because he is sued in his official capacity, we refer to the defendant as the County.

29 U.S.C. § 206(d)(1) (emphasis added). The County contends that that the wage differential is based on the fourth exception—the catchall exception: a "factor other than sex." It argues that an employee's prior salary can constitute a "factor other than sex" within the meaning of the catchall exception. However, this would allow the County to defend a sex-based salary differential on the basis of the very sex-based salary differentials the Equal Pay Act was designed to cure. Because we conclude that prior salary does not constitute a "factor other than sex," the County fails as a matter of law to set forth an affirmative defense. We affirm the district court's denial of summary judgment to the County and remand for proceedings consistent with this opinion.[3]

## Background

Aileen Rizo was hired as a math consultant by the Fresno County Office of Education in October 2009. Previously, she was employed in Maricopa County, Arizona as a middle and high school math teacher. In her prior position, Rizo earned an annual salary of $50,630 for 206 working days. She also received an educational stipend of $1,200 per year for her master's degrees in educational technology and mathematics education.

Rizo's new salary upon joining the County was determined in accordance with the County's Standard

---

[3] We leave to the district court the question whether Rizo is entitled to summary judgment on her Equal Pay Act claim. *See Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (en banc) ("We have long recognized that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party.").

Operating Procedure 1440 ("SOP 1440"), informally adopted in 1998 and formally adopted in 2004. The County's hiring schedule consists of 10 stepped salary levels, each level containing 10 salary steps within it. SOP 1440 dictates that a new hire's salary is to be determined by taking the hired individual's prior salary, adding 5%, and placing the new employee on the corresponding step of the salary schedule. Unlike the County's previous hiring schedule, SOP 1440 does not rely on experience to set an employee's initial salary. SOP 1440 dictated that Rizo be placed at step 1 of level 1 of the hiring schedule, corresponding to a salary of $62,133 for 196 days of work plus a master's degree stipend of $600.

During a lunch with colleagues in 2012, Rizo learned that her male colleagues had been subsequently hired as math consultants at higher salary steps. In August 2012, she filed a complaint about the pay disparity with the County, which responded that all salaries had been set in accordance with SOP 1440. The County claimed to have reviewed salary-step placements of male and female management employees for the past 25 years (so including before the policy was even informally adopted), finding that SOP 1440 placed more women at higher compensation steps than males. Rizo disputes this analysis and claims that the data show men were placed at a higher average salary step.

Rizo sued Jim Yovino in his official capacity as the Superintendent of the Fresno County Office of Education in February 2014. She claimed a violation of the Equal Pay Act, 29 U.S.C. § 206(d); sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); sex discrimination under California Government Code § 12940(a); and failure to prevent discrimination under California Government Code

§ 12940(k). *Rizo v. Yovino*, No. 1:14-cv-0423-MJS, 2015 WL 9260587, at *1 (E.D. Cal. Dec. 18, 2015), *vacated*, 854 F.3d 1161 (9th Cir.), *reh'g en banc granted*, 869 F.3d 1004 (9th Cir. 2017).

In June 2015, the County moved for summary judgment. It asserted that, although Rizo was paid less than her male counterparts for the same work, the discrepancy was based on Rizo's prior salary. The County contended that her prior salary was a permissible affirmative defense to her concededly lower salary than her male counterparts under the fourth, catchall clause, a "factor other than sex." *Rizo*, 2015 WL 9260587, at *7. The district court denied summary judgment, reasoning that SOP 1440 "necessarily and unavoidably conflicts with the EPA" because "a pay structure based exclusively on prior wages is so inherently fraught with the risk—indeed, here, the virtual certainty— that it will perpetuate a discriminatory wage disparity between men and women that it cannot stand." *Id.* at *9. It certified the legal question for interlocutory appeal, recognizing that denying summary judgment for the County "effectively resolves the issue of liability on Plaintiff's claims in her favor." *Id.* at *12.**[4]**

This Court granted the County's petition for permission to file an interlocutory appeal. The three-judge panel vacated the denial of summary judgment and remanded. *Rizo v. Yovino*, 854 F.3d 1161, 1167 (9th Cir.), *reh'g en banc granted*, 869 F.3d 1004 (9th Cir. 2017). The panel concluded that *Kouba v. Allstate Insurance Co.*, 691 F.2d

---

**[4]** The certified question was "whether, as a matter of law under the EPA, 29 U.S.C. § 206(d), an employer subject to the EPA may rely on prior salary alone when setting an employee's starting salary." *Id.* at *13.

873 (9th Cir. 1982) was controlling and that it permits prior salary alone to constitute a "factor other than sex" under the Equal Pay Act. In *Kouba*, the employer considered prior salary along with other factors, "including 'ability, education, [and] experience,'" in setting employees' salaries. *Rizo*, 854 F.3d at 1166 (quoting *Kouba*, 691 F.2d at 874). The panel concluded, however, that because *Kouba* "did not attribute any significance to Allstate's use of these other factors," that case permits consideration of prior salary alone, as long as use of that factor "was reasonable and effectuated some business policy." *Id.* Because it believed it was compelled to follow *Kouba*, the panel directed the district court on remand to consider the reasonableness of the County's proffered business reasons for its reliance on prior salary.

We granted the petition for rehearing *en banc* in order to clarify the law, including the vitality and effect of *Kouba*.

## Standard of Review

We review the district court's denial of summary judgment *de novo*. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). Summary judgment is available only when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. *Id.*

## Discussion

Congress enacted the Equal Pay Act in 1963 to put an end to the "serious and endemic problem of employment discrimination in private industry" and to carry out a broad mandate of equal pay for equal work regardless of sex. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). It set forth a simple structure to carry out this simple

principle. *See* 29 U.S.C. § 206(d)(1). A plaintiff must show that her employer has paid male and female employees different wages for substantially equal work. Not all differentials in pay for equal work violate the Equal Pay Act, however. The Act includes four statutory exceptions—"(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex"— which operate as affirmative defenses. *Id.*; *Corning*, 417 U.S. at 196; *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986). "[A]n employer [must] submit evidence from which a reasonable factfinder could conclude not simply that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018) (first citing *Stanziale v. Jargowsky*, 200 F.3d 101, 107-08 (3d Cir. 2000); and then citing *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006)); *see also* 29 U.S.C. § 206(d)(1) (exempting from liability wage differentials only where payment of which was "*made pursuant to*" an enumerated exception (emphasis added)).

The Equal Pay Act "creates a type of strict liability" for employers who pay men and women different wages for the same work: once a plaintiff demonstrates a wage disparity, she is *not* required to prove discriminatory intent. *Maxwell*, 803 F.2d at 446 (quoting *Strecker v. Grand Forks Cty. Social Serv. Bd.*, 640 F.2d 96, 99 n.1 (8th Cir. 1980) (en banc)). The County and Amicus Center for Workplace Compliance contend that the Supreme Court in *Washington County v. Gunther*, 452 U.S. 161 (1981), infused into Equal Pay Act law Title VII's disparate treatment analysis. This is clearly wrong. In *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, the Supreme Court stated, "the EPA does not require . . .

proof of intentional discrimination." 550 U.S. 618, 641 (2007).**[5]** More recently, the Fourth Circuit reaffirmed that "[a]n EPA plaintiff need not prove that the employer acted with discriminatory intent to obtain a remedy under the statute." *Md. Ins. Admin*., 879 F.3d at 120 (collecting cases). Accordingly, pretext as it is understood in the Title VII context plays no role in Equal Pay Act claims.**[6]**

Here, the County does not dispute that Rizo established a prima facie case and that none of the three specific statutory exceptions applies. The County urges instead that the fourth catchall exception, "any other factor other than sex," includes an employee's prior salary and applies when her starting salary is based on her prior salary. It acknowledges that if it is wrong, it has no defense to Rizo's Equal Pay Act claim.

The question in this case is the meaning of the catchall exception. This is purely a question of law. We conclude, unhesitatingly, that "any other factor other than sex" is limited to legitimate, job-related factors such as a prospective employee's experience, educational background, ability, or prior job performance. It is inconceivable that Congress, in an Act the primary purpose of which was to eliminate long-existing "endemic" sex-based wage disparities, would create an exception for basing new hires' salaries on those very disparities—disparities that

---

**[5]** *Superseded on other grounds by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.

**[6]** Because the issue in this case is one of law, we do not have occasion to address the burden-shifting framework applicable to Equal Pay Act as opposed to Title VII claims. *Maryland Insurance Administration*, however, sets forth the standards to apply when there are factual, rather than legal, disputes. *Id.* at 120-21, 120 n.6, 120 n.7.

Congress declared are not only related to sex but caused by sex. To accept the County's argument would be to perpetuate rather than eliminate the pervasive discrimination at which the Act was aimed. As explained later in this opinion, the language, legislative history, and purpose of the Act make it clear that Congress was not so benighted. Prior salary, whether considered alone or with other factors, is not job related and thus does not fall within an exception to the Act that allows employers to pay disparate wages. Reflecting the very essence of the Act, we hold that by relying on prior salary, the County fails as a matter of law to set forth an affirmative defense.

## A.

Allowing an employer to justify a wage differential between men and women on the basis of prior salary is wholly inconsistent with the provisions of the Equal Pay Act.[7] As the Supreme Court has emphasized, "[t]he Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." *Corning*, 417 U.S. at 208. The remedial purpose of the Act is clear: to put an end to historical wage discrimination against women. Representative Florence Dwyer said in support of the bill: "The issue here is really a very simple one—the *elimination* of one of the most persistent and obnoxious forms of discrimination which is still practiced in this enlightened

---

[7] This case arose in the context of initial wage-setting. By failing to address compensation for employees seeking promotions or changes in status within the same organization, we do not imply that the Equal Pay Act is inapplicable to these situations.

society."[8]  Representative Harold Donohue in his comments on the bill stressed a similar point: "[T]his measure represents the *correction* of basic injustice being visited upon women in many fields of endeavor . . . ."[9]  In other words, the Equal Pay Act was not intended to be a passive measure but a proactive one designed to correct salary structures based on the "outmoded belief" that women should be paid less than men. *See Corning*, 417 U.S. at 195 (quoting S. Rep. No. 88-176, at 1 (1963)).

In light of the clear intent and purpose of the Equal Pay Act, it is equally clear that we cannot construe the catchall exception as justifying setting employees' starting salaries on the basis of their prior pay.  At the time of the passage of the Act, an employee's prior pay would have reflected a discriminatory marketplace that valued the equal work of one sex over the other.  Congress simply could not have intended to allow employers to rely on these discriminatory wages as a justification for continuing to perpetuate wage differentials.

Today we express a general rule and do not attempt to resolve its applications under all circumstances.  We do not decide, for example, whether or under what circumstances, past salary may play a role in the course of an individualized salary negotiation.  We prefer to reserve all questions relating to individualized negotiations for decision in subsequent cases.  Our opinion should in no way be taken as barring or posing any obstacle to whatever resolution future

---

[8] 109 Cong. Rec. 9200 (1963) (statement of Rep. Dwyer) (emphasis added).

[9] *Id.* at 9212 (statement of Rep. Donohue) (emphasis added).

panels may reach regarding questions relating to such negotiations.[10]

## B.

Basic principles of statutory interpretation also establish that prior salary is not a permissible "factor other than sex" within the meaning of the Equal Pay Act. The County maintains that the catchall exception unambiguously provides that any facially neutral factor constitutes an affirmative defense to liability under the Equal Pay Act. It is incorrect. The Supreme Court in *Corning* did not find the Act clear on its face. Rather, that decision applied an analytical framework similar to the one we use here by looking to the history of the legislative process of the Equal Pay Act as well as the context in which the Act was adopted. 417 U.S. at 198–203. Following a similar method of analysis, it is clear that when the catchall exception is read in light of its surrounding context and legislative history, a legitimate "factor other than sex" must be job related and that prior salary cannot justify paying one gender less if equal work is performed.

## 1.

The Act "establishes four exceptions—three specific and one a general catchall provision." *Corning*, 417 U.S. at 196. Where, as here, a statute contains a catchall term at the end of a list, we rely on the related principles of *noscitur a sociis* and *ejusdem generis* to "cabin the contextual meaning" of the term, and to "avoid ascribing to [that term] a meaning so

---

[10] Accordingly, Judge McKeown's and Judge Callahan's complaints regarding our opinion's effect upon the setting of pay on an individualized basis are meritless.

broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 135 S. Ct. 1074, 1085-86 (2015) (plurality opinion) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)); *id.* at 1089 (Alito, J., concurring in judgment) (applying *noscitur a sociis* and *ejusdem generis*).

The canon *noscitur a sociis*—"a word is known by the company it keeps"—provides that words grouped together should be given related meaning. *Id.* at 1085 (plurality opinion). Here, the catchall phrase is grouped with three specific exceptions based on systems of seniority, merit, and productivity. These specific systems share more in common than mere gender neutrality; all three relate to job qualifications, performance, and/or experience. It follows that the more general exception should be limited to legitimate, job-related reasons as well.

A related canon, *ejusdem generis*, likewise supports our interpretation of the catchall term. We apply this canon when interpreting general terms at the end of a list of more specific ones. *Id.* at 1086. In such a case, "the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 114–15 (2001) (quoting 2A Norman J. Singer, *Sutherland on Statutes and Statutory Construction* § 47.17 (1991)). The inclusion of the word "other" before the general provision in the Equal Pay Act makes its meaning all the more clear: "[T]he principle of *ejusdem generis* . . . implies the addition of *similar* after the word *other*." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012). Here, we read the statutory exceptions as: "(i) a seniority system, (ii) a merit system, (iii) a system which

measures earnings by quantity or quality of production; or (iv) a differential based on any other [*similar*] factor other than sex."  29 U.S.C. § 206(d)(1).  A similar factor would have to be one similar to the other legitimate, job-related reasons.

The presence of the word "any"—which the County contends indicates the expansive reach of the fourth statutory exception—does not counsel against our interpretation.  In *Circuit City Stores*, for example, the Supreme Court interpreted § 1 of the Federal Arbitration Act, which lists "seamen, railroad employees, or *any other* class of workers engaged in foreign or interstate commerce" to include only transportation workers, not workers in literally any industry. 532 U.S. at 109, 114-15 (emphasis added) (quoting 9 U.S.C. § 1); *see also, e.g.*, *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1113-14 (9th Cir. 2003) (adopting district court's use of *ejusdem generis* to interpret the phrase "any other purposes specified by the legislature" as being limited to purposes directly related to gaming).

**2.**

Although "the authoritative statement is the statutory text," the legislative history of the Equal Pay Act further supports our interpretation that the catchall exception is limited to job-related factors.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).  "[T]he way in which Congress arrived at the statutory language" can provide "a better understanding of the [statutory] phrase" in question than "trying to reconcile or establish preferences between the conflicting interpretations of the Act by individual legislators or the committee reports." *Corning*, 417 U.S. at 198.  In *Corning*, the Supreme Court relied heavily on the history of the legislative process in interpreting the term "similar working conditions," a factor

in determining whether employees perform "equal work" under the Equal Pay Act. *Id.* at 199-201. The Court explained that "[a]s originally introduced," the Equal Pay bills considered in the House and Senate "required equal pay for 'equal work on jobs the performance of which requires equal skills'" and included "only two exceptions—for differentials 'made pursuant to a seniority or merit increase system which does not discriminate on the basis of sex.'" *Id.* at 199; S. 882, 88th Cong. § 4 (1963); S. 910, 88th Cong. § 4(a) (1963); H.R. 3861, 88th Cong. § 4(a) (1963); H.R. 4269, 88th Cong. § 4(a) (1963). Industry representatives during the House and Senate hearings were "highly critical of the Act's definition of equal work and of its exemptions." *Corning*, 417 U.S. at 199. The *Corning* Court compared the original language in the House and Senate bills to that in the final Act and thought "it plain that in amending the bill's definition of equal work to its present form, the Congress acted in direct response to these pleas" for a more definite standard for equal work based on bona fide job evaluation plans. *Id.* at 200. The Court then used that context to interpret "similar working conditions." *Id.* at 200-01.

We, too, look to the history of the legislative process and draw a similar conclusion that the inclusion of the catchall provision in the final bill was in direct response to the entreaties of industry witnesses. Industry representatives testified at the congressional subcommittee hearings that the two exceptions in the bills that had been introduced in the House and Senate were too specific and under inclusive, and "evidence[d] . . . a lack of understanding of industrial reality." *Equal Pay Act: Hearings Before the H. Special Subcomm. on Labor of the H. Comm. on Educ. & Labor on H.R. 3861, 4269, and Related Bills*, 88th Cong. 135 (1963) [hereinafter *House Hearing*] (statement of the American Retail Federation). The witnesses were concerned that

companies would no longer be able to rely on the wide variety of factors used across industries to measure the value of a particular job. Accordingly, the witnesses proposed a series of job-related exceptions in addition to the two original exceptions that had covered only seniority and merit systems.

Chief among those was an exception for job classification programs. The Vice President of Owens-Illinois Glass Co. testified: "Job classification and wage incentive programs are so widely accepted . . . in American industry that there seems little need to set forth a lengthy list of reasons why they should be excepted from the present bill." *Id.* at 101 (statement of W. Boyd Owen, Vice President of Personnel Administration, Owens-Illinois Glass Co.). Bona fide job classification programs were necessarily job related because they were used to "establish relative job worth" in diverse industries, "each [of which] has its own peculiarities and its own customs." *Id.* at 238 (statement of E.G. Hester, Director of Industrial Relations Research, Corning Glass Works). Using factors like skill and responsibility, these classification programs were "a yardstick against which [employers] can measure work performance and consequently pay." *Id.* at 146 (statement of John G. Wayman, Partner, Reed, Smith, Shaw & McClay). The Owens-Illinois Glass representative, Mr. Owen, explained that his proposed exceptions based on job classification and wage incentive programs would "merely parallel" the existing exceptions for seniority and merit systems, *id.* at 101, both of which were themselves job related.

Most of the other exceptions urged by industry witnesses were also job related. Mr. Owen, for example, explained that there are "countless reasons for wage variations . . . which

are not discriminatory in nature," including differences in "the shift or time of day worked, in the regularity of performing duties, [and] in training." *Id.* at 100. The statement of the American Retail Federation likewise explained: "It is a wholly justifiable fact that in retailing there are many situations where there are differentials in wage scales based on experience, hours worked (day or evening), job hazards, physical requirements, and the like." *Id.* at 135.

We think it plain that the catchall exception was added to the final Equal Pay Act in direct response to these employers' concerns that their legitimate, job-related means of setting pay would not be covered under the two exceptions already included in the bill.[11]  Following the hearings, Representative Edith Green introduced H.R. 6060, which added the exceptions for "a differential based on any other factor other than sex" as well as "a system which measures earnings by quantity or quality of production." H.R. 6060, 88th Cong. § 2(d)(1) (1963). In its report discussing H.R. 6060, the House Committee explained that "a bona fide job classification program that does not discriminate on the basis of sex will serve as a valid defense to a charge of discrimination." H.R. Rep. No. 88-309, at 3 (1963), *as*

---

[11] While the third exception under the Equal Pay Act—"a system which measures earnings by quantity or quality of production"—is not at issue in this case, we note that this exception was also added following the hearings and that the exception roughly corresponds to the "wage incentive programs" discussed by the Owens-Illinois Glass representative. *See House Hearing* at 99, 101 (statement of W. Boyd Owen, Vice President, Owens-Illinois Glass Co.); *Equal Pay Act of 1963: Hearings Before the S. Subcomm. on Labor of the S. Comm. on Labor & Pub. Welfare on S. 882 and S. 910*, 88th Cong. 138 (1963) (statement of W. Boyd Owen, Vice President of Personnel Administration, Owens-Illinois Glass Co.).

*reprinted in* 1963 U.S.C.C.A.N. 687, 689.  The Committee also provided an illustrative list of other factors in addition to job classification programs which would be covered under the fourth exception, the catchall provision: "[A]mong other things, shift differentials, restrictions on or differences based on time of day worked, hours of work, lifting or moving heavy objects, differences based on experience, training, or ability would also be excluded."  *Id.*  In the end, Representative Robert Griffin, author of the Landrum-Griffin Act, the landmark labor-relations legislation, put it best.  Describing the catchall exception, he said, "Roman numeral iv is a broad principle, and those preceding it are really examples."[12]

The Senate Committee Report likewise confirms that Congress intended the catchall exception to cover factors other than sex only insofar as they were job related.  Following the hearings, Senator Patrick McNamara introduced S. 1409, which removed reference to seniority and merit systems and instead included just one statutory exception that was virtually identical to the Act's catchall exception.  S. 1409, 88th Cong. § 2(d)(1) (1963).  That exception read, "except where such a wage differential is based on any factor or factors other than sex."  *Id.*  In its report, the Senate Committee provided illustrative examples of what this general exception would cover: "seniority systems . . . based on tenure," "merit system[s]," "piecework system[s] which measure[] either the quantity or quality of production or performance," and "[w]ithout question," "other valid classification programs . . . ."  S. Rep. No. 88-176, at 4 (1963).  Ultimately, the House version of the bill prevailed, with the House passing H.R. 6060 on May 23, 1963, *see* 109 Cong. Rec. 9217, and the Senate agreeing by

---

[12] 109 Cong. Rec. 9203 (1963) (statement of Rep. Griffin).

a voice vote to the House amendments on May 28, 1963, *see id.* at 9761-62. In other words, the Senate contemplated from the start that the factors ultimately exempted by the House bill would be covered by a catchall provision identical in substance to the fourth exception and that it would cover only job-related factors.

Contrary to the County's assertion, *Washington County v. Gunther*, 452 U.S. 161 (1981), supports the concept of a catchall provision limited to job-related factors. The Court commented in *Gunther* that "courts and administrative agencies are not permitted to 'substitute their judgment for the judgment of the employer . . . who [has] established and applied a bona fide job rating system . . . .'"[13] The predicate for this dictum is that the employer must both establish a bona fide work-related system and apply it in good faith. The Court went on to reiterate its earlier conclusion in *Corning* that "the Equal Pay bill [was] amended . . . to add the fourth affirmative defense because of a concern that bona fide job-evaluation systems used by American businesses would otherwise be disrupted." *Id.* at 170 n.11 (citing *Corning*, 417 U.S. at 199-201). In sum, so long as the employer proves that it is using a bona fide job classification system or otherwise relying on bona fide job-related factors to set pay, courts will not second guess the merits of the particular method used. Courts have followed the *Gunther* mandate. They have not held, for example, that it would be more appropriate to value educational background over years of experience when setting salaries or that job training should outweigh demonstrated ability to do the job. *Gunther* thus implicitly endorsed the bargain struck in the Equal Pay

---

[13] 452 U.S. at 171 (alterations in the original) (quoting 109 Cong. Rec. 9209 (1963) (statement of Rep. Goodell)).

Act: employers may continue to use their legitimate, job-related means of setting pay but may not use sex directly or indirectly as a basis for establishing employees' wages.[14]

### 3.

We are not the only federal court of appeals to construe the catchall exception as limited to job-related factors.[15] The Eleventh Circuit, for example, has concluded that "the 'factor other than sex' exception applies when the disparity results from unique characteristics of the same job; from an individual's experience, training, or ability . . ."—in other words, job-related reasons.[16]   *Glenn*, 841 F.2d at 1571.

---

[14] When there is a factual dispute over whether the Equal Pay Act was violated, courts have established a procedure for resolving such disputes which differs somewhat from the Title VII format. *See supra* note 6; *see also Md. Ins. Admin.*, 879 F.3d at 120.

[15] *See Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015); *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 526 (2d Cir. 1992); *EEOC v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988); *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988). *But see Taylor v. White*, 321 F.3d 710, 717-18 (8th Cir. 2003) ("[W]e are reluctant to establish any per se limitations to the 'factor other than sex' exception . . . ."); *Covington v. S. Ill. Univ.*, 816 F.2d 317, 321-22 (7th Cir. 1987).

[16] Although the Eleventh Circuit also listed "special exigent circumstances connected with the business," it did so in reference to "red circle rates." *Glenn*, 841 F.2d at 1571 (quoting H.R. Rep. No. 88-309, at 3). Red circle rates, a term from the War Labor Board, refers to "unusual, higher than normal wage rates" paid when "an employer . . . must reduce help in a skilled job" so that skilled employees are "available when they are again needed for their former jobs." H.R. Rep. No. 88-309, at 3. In other words, these rates are paid based on the skills and experience of the particular employee who is temporarily

Although some courts occasionally use "job-related" and terminology like "business-related" or "legitimate business reason[s]" interchangeably, we believe that it is neither helpful nor advisable to do so.  Terms like "business-related" have been used loosely in a number of cases to refer to factors that are in fact job related.  For example, in *Aldrich*, the Second Circuit used interchangeably the terms "job-relatedness requirement," "legitimate business-related differences in work responsibilities and qualifications for the particular positions," and "legitimate business-related considerations" to describe "the proper legal standard for the factor-other-than-sex defense."   963 F.2d at 525, 527.  Remanding the case to the district court, however, the Second Circuit was clear in its instructions: the employer could justify the wage differential "*only if the employer proves that the [factor relied on] is job-related.*"  *Id.* at 527 (emphasis added).[17]

---

transferred to a position requiring fewer skills and normally paying less. In short, red circle rates are indeed job related.

[17] We have been able to find only one circumstance in which the use of the term "business-related" does not refer to a factor that is in fact job related.  In *EEOC v. J.C. Penney Co.*, the Sixth Circuit concluded that a health benefits plan that provided spousal coverage only if the employee was the "head of household" (i.e. the higher earner) was justified by the "legitimate business reason" of "minimizing or controlling cost." 843 F.2d 249, 253 (7th Cir. 1988); *see also Wambheim v. J.C. Penney Co.*, 705 F.2d 1492, 1495 (9th Cir. 1983) (same).  The EEOC approved the system grudgingly, requiring that any such defense be "closely scrutinized" because it "bears no relationship to the requirements of the job or to the individual's performance on the job."  29 C.F.R. § 1620.21 (2017).  In fact, a head-of-household benefits system appears to be in considerable tension with *City of Los Angeles, Department of Water & Power v. Manhart*, 435 U.S. 702 (1978).  *See infra.*

Including "business-related" as a legitimate basis for exceptions under the catchall provision would permit the use of far too many improper justifications for avoiding the strictures of the Act. Not every reason that makes economic sense—in other words, that is business related—constitutes an acceptable factor other than sex. To the contrary, using the word "business" risks conflating a legitimate factor other than sex with any cost-saving mechanism. The Supreme Court and Congress have repeatedly rejected such an interpretation of the fourth exception.

In *Corning*, the Supreme Court readily dismissed the notion that an employer may pay women less under the catchall exception because women cost less to employ, thus saving the employer money. The Court explained that the "market forces theory"—that women will be willing to accept lower salaries because they will not find higher salaries elsewhere—did not constitute a factor other than sex even though such a method of setting salaries could have saved the company a considerable amount and so would have constituted a good "business" reason. *Corning*, 417 U.S. at 205. The Court explained that "Congress declared it to be the policy of the Act to correct" the "unfair employer exploitation of this source of cheap labor." *Id.* at 206 (quoting *Hodgson v. Corning Glass Works*, 474 F.2d 226, 234 (2d Cir. 1973)). "That the company took advantage of such a situation may be understandable as a matter of economics, but its differential nevertheless became illegal once Congress enacted into law the principle of equal pay for equal work." *Id.* at 205.

Congress and the Supreme Court have also rejected the notion that an employer may pay women less under the catchall exception because women cost more to employ. In *City of Los Angeles, Department of Water & Power v.*

*Manhart*, the Supreme Court considered whether the Department's practice of requiring female employees—who on average lived longer than male employees—to make larger contributions from their paychecks to its pension fund than male employees was a discriminatory employment practice. 435 U.S. at 704-05.[18] In deciding that this alleged cost difference was not a permissible factor other than sex, the Court explained that Congress had rejected an amendment to the Equal Pay Act "that would have expressly authorized a wage differential tied to the 'ascertainable and specific added cost resulting from employment of the opposite sex.'" *Id.* at 717 n.32 (quoting 109 Cong. Rec. 9217 (statement of Rep. Findley)). Acknowledging that the legislative history is inconclusive as to whether a cost-justification exception could constitute a factor other than sex, the Court noted that "[i]t is difficult to find language in the statute supporting even this limited defense." *Id.* The Court also emphasized that the Wage and Hour Administrator, then charged with enforcing the Act, had interpreted that "a wage differential based on differences in the average costs of employing men and women is not based on a factor other than sex.'" *Id.* at 714 n.26 (quoting 29 C.F.R. § 800.151 (1977)). The Equal Employment Opportunity Commission, the agency now charged with enforcing the Equal Pay Act, continues to interpret the Act this way. *See* 29 C.F.R. § 1620.22 (2017). Thus, although the catchall exception applies to a wide variety of job-related factors, it does not encompass reasons that are simply good

---

[18] Because the plaintiffs alleged a violation of Title VII based on unequal wages for equal work, the Equal Pay Act's affirmative defenses, including the catchall exception, applied through the Bennett Amendment to Title VII. *Id.* at 707, 712 n.22 (citing 42 U.S.C. § 2000e-2(h)).

for business. We use "job-related" rather than "business-related" to clarify the scope of the exception.

## 4.

Prior salary does not fit within the catchall exception because it is not a legitimate measure of work experience, ability, performance, or any other job-related quality. It may bear a rough relationship to legitimate factors other than sex, such as training, education, ability, or experience, but the relationship is attenuated. More important, it may well operate to perpetuate the wage disparities prohibited under the Act. Rather than use a second-rate surrogate that likely masks continuing inequities, the employer must instead point directly to the underlying factors for which prior salary is a rough proxy, at best, if it is to prove its wage differential is justified under the catchall exception.

## C.

We took this case *en banc* to clarify our law and the effect of *Kouba v. Allstate Insurance Co.*, 691 F.2d 873 (9th Cir. 1982). In *Kouba*, we concluded that "the Equal Pay Act does not impose a strict prohibition against the use of prior salary." *Id.* at 878. Here, the district court recognized that its holding that prior salary alone cannot justify a wage differential potentially conflicted with *Kouba*, in which the salary structure was based on multiple factors including prior salary. *Rizo*, 2015 WL 9260587, at *12. The three-judge panel concluded that our decision in *Kouba* permits an employer to "maintain a pay differential based on prior salary . . . only if it showed that the factor 'effectuate[s] some business policy' and that the employer 'use[s] the factor reasonably in light of the employer's stated purpose as well as its other practices.'" *Rizo*, 854 F.3d at 1161, 1165 (alterations in original) (quoting *Kouba*, 691 F.2d at 878).

The panel explained that *Kouba* "did not attribute any significance to [the employer's] use of [] other factors"—ability, education, and experience—in addition to prior salary in setting employees' initial salaries. *Id.* at 1166. At the same time, *Kouba* directed the district court on remand to consider the extent to which "the employer also uses other available predictors of the new employee's performance." *Kouba*, 691 F.2d at 878.

Because *Kouba*, however construed, is inconsistent with the rule that we have announced in this opinion, it must be overruled. First, a factor other than sex *must* be one that is job related, rather than one that "effectuates some business policy." Second, it is impermissible to rely on prior salary to set initial wages. Prior salary is not job related and it perpetuates the very gender-based assumptions about the value of work that the Equal Pay Act was designed to end. This is true whether prior salary is the sole factor or one of several factors considered in establishing employees' wages. Although some federal courts of appeals allow reliance on prior salary along with other factors while barring reliance on prior salary alone, *see, e.g.*, *Glenn*, 841 F.2d at 1571 & n.9, this is a distinction without reason: we cannot reconcile this distinction with the text or purpose of the Equal Pay Act. Although Judges McKeown and Callahan correctly acknowledge in their concurrences that basing initial salary on an employee's prior salary alone violates the Equal Pay Act, neither offers a rational explanation for their incompatible conclusion that relying on prior salary in addition to one or more other factors somehow is consistent with the Act. Declining to explain the inconsistency of their positions, they simply rely on those who came before—the EEOC and other courts of appeals, which also fail to explain how what is impermissible alone somehow becomes permissible when joined with other factors. For obvious

reasons, we cannot agree. Reliance on past wages simply perpetuates the past pervasive discrimination that the Equal Pay Act seeks to eradicate. Therefore, we readily reach the conclusion that past salary may not be used as a factor in initial wage setting, alone or in conjunction with less invidious factors.

## Conclusion

Unfortunately, over fifty years after the passage of the Equal Pay Act, the wage gap between men and women is not some inert historical relic of bygone assumptions and sex-based oppression. Although it may have improved since the passage of the Equal Pay Act, the gap persists today: women continue to receive lower earnings than men "across industries, occupations, and education levels."[19] "Collectively, the gender wage gap costs women in the U.S. over $840 billion a year."[20] If money talks, the message to women costs more than "just" billions: women are told they are not worth as much as men. Allowing prior salary to justify a wage differential perpetuates this message, entrenching in salary systems an obvious means of

---

[19] Equal Rights Advocates Amicus Br. at 12 (footnotes omitted) (first citing Nat'l P'ship for Women & Families, *America's Women and the Wage Gap* 2 (2017), http://www.nationalpartnership.org/research-library/workplace-fairness/fair-pay/americas-women-and-the-wage-gap.pdf; and then citing Francine D. Blau & Lawrence M. Kahn, *The Wage Gap: Extent, Trends, and Explanations*, (Nat'l Bureau of Econ. Research, Working Paper No. 21913, 2016), http://www.nber.org/papers/w21913.pdf).

[20] *Id.* at 11 (citing Nat'l P'ship for Women & Families, *supra* note 19, at 1).

discrimination—the very discrimination that the Act was designed to prohibit and rectify.

**AFFIRMED AND REMANDED.**

---

McKEOWN, Circuit Judge, with whom MURGUIA, Circuit Judge, joins, concurring:

For decade after decade, gender discrimination has been baked into our pay scales, with the result that women still earn only 80 percent of what men make. Unfortunately, women employed in certain sectors face an even larger gap. This disparity is exacerbated when a woman is paid less than a man for a comparable job solely because she earned less at her last job. The Equal Pay Act prohibits precisely this kind of "piling on," where women can never overcome the historical inequality.

I agree with most of the majority opinion—particularly its observation that past salary can reflect historical sex discrimination. But the majority goes too far in holding that any consideration of prior pay is "impermissible" under the Equal Pay Act, even when it is assessed with other job-related factors such as experience, education, past performance and training. In my view, prior salary alone is not a defense to unequal pay for equal work. If an employer's only justification for paying men and women unequally is that the men had higher prior salaries, odds are that the one-and-only "factor" causing the difference is sex. However, employers do not necessarily violate the Equal Pay Act when they consider prior salary among other factors when setting initial wages. To the extent salary is considered with other factors, the burden is on the employer to show that

any pay differential is based on a valid job-related factor other than sex.

To be sure, the majority correctly decides the only issue squarely before the court: whether the Fresno County Office of Education was permitted to base Aileen Rizo's starting salary solely on her prior salary. The answer is no. But regrettably, the majority goes further and effectively bars any consideration of prior salary in setting a new salary. Not only does Rizo's case not present this issue, but this approach is unsupported by the statute, is unrealistic, and may work to women's disadvantage.

Rizo's case is an easy one. After she was hired as a math consultant, she learned that male colleagues in the same job were being hired at a higher salary. The only rationale offered by the County was that Rizo's salary was lower at a prior job. In effect, the County "was still taking advantage of the availability of female labor to fill its [position] at a differentially low wage rate not justified by any factor other than sex"—a practice long held unlawful. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974); *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1570 (11th Cir. 1988) ("[T]he argument that supply and demand dictates that women *qua* women may be paid less is exactly the kind of evil that the [Equal Pay] Act was designed to eliminate, and has been rejected."); *Drum v. Leeson Elec. Corp.*, 565 F.3d 1071, 1073 (8th Cir. 2009) (It is "prohibited" to rely on the "'market force theory' to justify lower wages for female employees simply because the market might bear such wages.").

This scenario provides a textbook violation of the "equal pay for equal work" mantra of the Equal Pay Act. Prior salary level created the only differential between Rizo and her male colleagues. The County did not, for example,

consider Rizo's two advanced degrees or her prior experience in setting her initial salary. This historical imbalance entrenched unequal pay for equal work based on sex—end of story. The County cannot mount a defense on past salary alone.

Congress enacted the Equal Pay Act to root out historical sex discrimination, declaring it the "policy" of the Act "to correct the conditions" of "wage differentials based on sex." Pub. L. No. 88-38, 77 Stat. 56 (1963). At the signing ceremony, President John F. Kennedy called the Act "a first step" in "achiev[ing] full equality of economic opportunity—for the average woman worker earns only 60 percent of the average wage for men." President John F. Kennedy, Remarks Upon Signing the Equal Pay Act (June 10, 1963), http://www.presidency.ucsb.edu/ws/?pid=9267. The unqualified goal of the statute was to "eliminate wage discrimination based upon sex." H.R. REP. NO. 88-309, at 1 (1963). Sadly, that gap remains today—with the median salary of a female employee being only 80 percent of that of a male. *See* NAT'L P'SHIP FOR WOMEN & FAMILIES, AMERICA'S WOMEN AND THE WAGE GAP 1 (2017), https://goo.gl/SLEcd8.

Given the stated goal of the Equal Pay Act to erase the gender wage gap, it beggars belief that Congress intended for historical pay discrepancies like Rizo's to justify pay inequity. *See Corning*, 417 U.S. at 195 ("Congress' purpose in enacting the Equal Pay Act was to remedy . . . [an] endemic problem of employment discrimination . . . based on an ancient but outmoded belief that a man . . . should be paid more than a woman even though his duties are the same."). Congress recently noted that the existence of gender-based pay disparities "has been spread and perpetuated" since the passage of the Act and "many women

continue to earn significantly lower than men for equal work." H.R. REP. No. 110-783, at 1–2 (2008). "In many instances, the pay disparities can only be due to continued intentional discrimination *or the lingering effects of past discrimination.*" *Id.* (emphasis added). Because past pay can reflect the very discrimination Congress sought to eradicate in the statute, allowing employers to defend unequal pay for equal work on that basis alone risks perpetuating unlawful inequity. *C.f. Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 647 (2007) (Ginsburg, J., dissenting), *dissenting position adopted by legislative action* (Jan. 29, 2009) ("Paychecks perpetuating past discrimination . . . are actionable . . . because they discriminate anew each time they issue."). That danger is best avoided by construing the Equal Pay Act "to fulfill the underlying purposes which Congress sought to achieve" and rejecting prior salary as its own "factor other than sex" defense. *Corning*, 417 U.S. at 208.

Yet I differ with the majority in one key respect. Merely because prior pay is unavailable as a standalone defense does not mean that employers may never use past pay as a factor in setting initial wages.[1] Using prior salary along with valid job-related factors such as education, past performance and training may provide a lawful benchmark for starting salary in appropriate cases.[2] This interpretation of the statute still

---

[1] Contrary to the majority's assertion, it is wholly consistent to forbid employers from baldly asserting prior salary as a defense—without determining whether it accurately measures experience, education, training or other lawful factors—and to permit consideration of prior salary along with those valid factors.

[2] As Congress observed, "there are many factors which may be used to measure the relationships between jobs and which establish a valid basis for a difference in pay." H.R. REP. No. 88-309, at 3 (1963). But

places the burden on the employer to justify that salary is determined on the basis of "any other factor other than sex."

My views align with those of the Equal Employment Opportunity Commission ("EEOC"), the agency charged with administering the Act, and most of our sister circuits that have addressed the question. The EEOC's Compliance Manual states:

> [A]n employer may consider prior salary as part of a mix of factors—as, for example, where the employer also considers education and experience and concludes that the employee's prior salary accurately reflects ability, based on job-related qualifications. But because "prior salaries of job candidates can reflect sex-based compensation discrimination," "[p]rior salary cannot, by itself, justify a compensation disparity."

EEOC Amicus Br. 7 (quoting EEOC Compliance Manual, Compensation Discrimination § 10-IV.F.2.g (Dec. 5, 2000), *available at* https://www.eeoc.gov/policy/docs/compensatio n.html).

The Tenth and Eleventh Circuits reached the same conclusion, holding that prior pay alone cannot justify a compensation disparity. *See Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015) (an employer may decide to pay an elevated salary to an applicant who rejects a lower offer, but the Act "precludes an employer from relying solely upon a prior salary to justify pay disparity"); *Irby v. Bittick*,

---

"wage differentials based *solely* on the sex of the employee are an unfair labor standard." *Id.* at 2–3 (emphasis added).

44 F.3d 949, 955 (11th Cir. 1995) ("This court has not held that prior salary can never be used by an employer to establish pay, just that such a justification cannot solely carry the affirmative defense."). The Eighth Circuit has adopted a similar approach, permitting the use of prior salary as a defense, but "carefully examin[ing] the record to ensure that an employer does not rely on the prohibited 'market force theory' to justify lower wages" for women based solely on sex. *Drum*, 565 F.3d at 1073. The Second Circuit likewise allows the prior-salary defense, but places the burden on an employer to prove that a "bona fide business-related reason exists" for a wage differential—i.e., one that is "rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525–26 (1992).

Only the Seventh Circuit has veered far off course, holding that prior salary is *always* a "factor other than sex." *See Wernsing v. Dep't of Human Servs., State of Illinois*, 427 F.3d 466, 468–70 (2005). But its conclusion—that a "factor other than sex" need not be "related to the requirements of the particular position" or even "business related"—contravenes the Act's purpose of ensuring women and men earn equal pay for equal work. *Id.* at 470. After all, inherent in the Act is an understanding that compensation should mirror one's "skill, effort, and responsibility." *See Corning*, 417 U.S. at 195 (quoting 29 U.S.C. § 206(d)(1)); *see also Glenn*, 841 F.2d at 1571. Because we know that historical sex discrimination persists, it cannot be that prior salary always reflects a factor other than sex.

I fear, however, that the majority makes the same categorical error as the Seventh Circuit, but in the opposite direction: it announces that prior salary is *never* a "factor

other than sex." By forbidding consideration of prior salary altogether, the majority extends the scope of the statute and risks imposing Equal Pay Act liability on employers for using prior salary as *any* part of the calculus in making wage-setting decisions. That, too, is a drastic holding, particularly because companies and institutions often consider prior salary in making offers to lure away top talent from their competitors or to attract employees with specific skills. In unpacking what goes into the calculation, it may well be that salary accurately gauges a prospective employee's "skill, effort, and responsibility," as the Equal Pay Act envisions—in addition to her education, training, and past performance—and a new employer wants to exceed that benchmark. The Equal Pay Act should not be an impediment for employees seeking a brighter future and a higher salary at a new job. *See generally* ORLY LOBEL, TALENT WANTS TO BE FREE 49–75 (Yale Univ. Press 2013) (concluding that employee mobility between competitors promotes innovation and job growth); Cade Metz, *Tech Giants Are Paying Huge Salaries for Scarce A.I. Talent*, N.Y. TIMES, Oct. 23, 2017, at B1 (noting that employers pay a premium to hire top engineering talent).

On that front, states have begun passing statutes that prohibit employers from asking employees about their prior salaries.[3] California's statute just went into effect. *See* Cal. Labor Code § 432.3. Those laws represent creative efforts to narrow the gender wage gap. But they also provide important exemptions for employees who wish to disclose

---

[3] A bill has been introduced in Congress to enact a federal prohibition on "requiring" or "requesting" that prospective employees disclose previous wages or salary history. *See* H.R. 2418, 115th Cong. (2017). Like its state counterparts, this bill does not seek to outlaw salary negotiations initiated by an employee.

prior salaries as part of a salary negotiation. *See, e.g.*, Cal. Labor Code § 432.3(g). Although the majority professes that its decision does not relate to negotiated salaries, the principle of the majority's holding may reach beyond these state statutes by making it a violation of federal antidiscrimination law to consider prior salary, even when an employee chooses to provide it as a bargaining chip for higher wages. I am concerned about chilling such voluntary discussions. Indeed, the result may disadvantage rather than advantage women.

To avoid those consequences, the majority endeavors to limit its decision by announcing that it "express[es] a general rule and do[es] not attempt to resolve its applications under all circumstances." The majority disclaims, for example, deciding "whether or under what circumstances, past salary may play a role in the course of an individualized salary negotiation." *See* Maj. Op. at 14. The majority's disclaimer hardly cushions the practical effect of its "general rule." Because the majority makes it "impermissible to rely on prior salary to set initial wages" under the Act, it has left little daylight for arguing that negotiated starting salaries should be treated differently than established pay scales. *See* Maj. Op. at 28. In the real world, an employer "rel[ies] on prior salary to set initial wages" when it takes the prior salary offered voluntarily by an employee in negotiations and sets a starting salary above those past wages, even if there is an established pay scale.

The more limited holding adopted by our sister circuits better accords with common sense and the statutory text. The Equal Pay Act provides an affirmative defense for "*any* other factor other than sex." *See* 29 U.S.C. § 206(d)(1) (emphasis added). The majority opinion recognizes that "legitimate, job-related factors such as a prospective

employee's experience, educational background, ability, or prior job performance" operate as affirmative defenses. But the majority nonetheless renders those valid, job-related factors nugatory when an employer also considers prior salary. That is a puzzling outcome.

For these reasons, I concur in the result, but not the majority's rationale.

---

CALLAHAN, Circuit Judge, with whom TALLMAN, Circuit Judge, joins, concurring:

We all agree that men and women should receive equal pay for equal work regardless of gender. Indeed, we agree that the purpose of the Equal Pay Act of 1963 was to change "should receive equal pay" to "must receive equal pay." However, I write separately because in holding that prior salary can never be considered, the majority fails to follow Supreme Court precedent, unnecessarily ignores the realities of business and, in doing so, may hinder rather than promote equal pay for equal work.

The factual fallacies of the majority opinion are, first, that prior salary is not generally job-related, and second, that prior salary inherently reflects wage discrepancies based on gender. In fact, prior salary is a prominent consideration for both a job applicant and the potential employer. The applicant presumably seeks a job that will pay her more and the potential employer recognizes that it will have to pay her more if it wants to hire her. Of course, a prior salary might reflect a wage discrepancy based on gender, but this does not justify the majority's absolute position.

Prior salary serves, in combination with other factors, to allow employers to set a competitive salary that will entice potential employees to take the job. The majority's approach ignores these economic incentives and appears to demand a lockstep pay system such as is often used in government service.[1] We allow private industry more flexibility. In the private sector, basing initial salary upon previous salary, plus other factors such as experience and education, encourages hard work and rewards applicants who have stellar credentials. The majority opinion stifles these economic incentives with a flat prohibition on ever considering prior salary, no matter how enlightened or non-discriminatory it may have been.

Second, the assumption that prior salary inherently reflects gender bias is not true. The majority opinion completely ignores economic disparity in pay for the same jobs performed in different parts of the country, where costs of living are lower and demand for available jobs may exceed the supply of available and highly competitive positions. While there is no question that prior salary in some instances may well reflect gender discrimination, this is not always the case. Historically, differences in prior salaries may simply reflect the differing costs of living in various parts of the country. And the flat prohibition ignores the fact that when the prior salary was set there may well have been more qualified job seekers than there were available jobs to fill.

---

[1] *See United States Office of Personnel Management*, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/federal-wage-system/ (last visited Feb. 21, 2018).

I

As required by the Equal Pay Act, Rizo, at least for the purposes of a motion for summary judgment, made a prima facie case of pay discrimination by showing that (1) she performed substantially equal work to that of her male colleagues; (2) the work conditions were basically the same; and (3) the male employees were paid more. *See Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015).

The County does not contest the prima facie case but argues that Rizo's salary was exempt from Equal Pay Act coverage under the fourth exception in 29 U.S.C. § 206(d)(1). Subsection (d)(1) reads:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

We agree that this suit turns on our interpretation of the fourth exception in 29 U.S.C. § 206(d)(1): "a differential based on any other factor other than sex."

## II

"The Equal Pay Act is broadly remedial and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." *Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974). The majority struggles mightily and unnecessarily to couple the fourth exception—despite its clear language—so closely with the other three exceptions that it loses independent meaning.[2]  In doing so, the majority conveniently overlooks the differences within the three specific exceptions.  While merit systems and measuring earnings by quantity and quality of production are specifically job-related, that is not true of seniority systems. Indeed, at the time of the passage of the Equal Pay Act, if not today, seniority systems accounted for a fair amount of pay inequality.[3]  Furthermore, the majority's insistence that

---

[2] The majority invokes the old chestnuts of statutory interpretation, *noscitur a sociis* and *ejusdem generis*, but they are not very helpful.  The Supreme Court in *Corning Glass*, 417 U.S. at 196, recognized that the Equal Pay Act "establishes four exceptions—three specific and one general catchall provision."  It follows that *noscitur a sociis*—"a word is known by the company it keeps"—does not aid our interpretation of the statute because the catchall provision is intended to contrast with the specific exceptions, not reflect them.  For the same reason, *ejusdem generis* is of little assistance as the "catchall provision" is not intended to be similar to the specific exceptions.

[3] For example, one-quarter of the complaints filed in the year after the passage of the Equal Pay Act concerned complaints by women that they were excluded from jobs because of seniority rules or because men were preferred over women after layoffs. Vicki Lens, *Supreme Court*

the fourth exception is limited to specific job-related qualities is contrary to the Supreme Court's statement that the fourth exception "was designed differently, to confine the application of the Act to wage differentials attributable to sex discrimination." *Washington Cty. v. Gunther*, 452 U.S. 161, 170 (1981).[4] Thus, the Equal Pay Act's fourth

*Narratives on Equality and Gender Discrimination in Employment: 1971–2002*, 10 Cardozo Women's L.J. 501, 507 (2004).

[4] The paragraph from which this quote is taken reads in full:

> More importantly, incorporation of the fourth affirmative defense could have significant consequences for Title VII litigation. Title VII's prohibition of discriminatory employment practices was intended to be broadly inclusive, proscribing "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). The structure of Title VII litigation, including presumptions, burdens of proof, and defenses, has been designed to reflect this approach. The fourth affirmative defense of the Equal Pay Act, however, was designed differently, to confine the application of the Act to wage differentials attributable to sex discrimination. H.R. Rep. No. 309, 88th Cong., 1st Sess., 3 (1963), U.S.Code Cong. & Admin.News 1963, p. 687. Equal Pay Act litigation, therefore, has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a bona fide use of "other factors other than sex." Under the Equal Pay Act, the courts and administrative agencies are not permitted to "substitute their judgment for the judgment of the employer ... who [has] established and applied a bona fide job rating system," so long as it does not discriminate on the basis of sex. 109 Cong.Rec. 9209 (1963) (statement of Rep. Goodell, principal exponent of the Act). Although we do not decide in this case

exception for any "differential based on any other factor other than sex" allows for reasonable business reasons that extend beyond the narrow definition of job-related.

More importantly, the limitation of "any other factor other than sex" to specific job-related qualities is contrary to the Supreme Court's approach in *Washington County*. The Court explained that Equal Pay Act litigation "has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a bona fide use of 'other factors other than sex.'" 452 U.S. at 170. The Court went on to hold that courts and administrative agencies were not permitted to substitute their judgment for the judgment of the employer "so long as it does not discriminate on the basis of sex." *Id.* at 171. Thus, we are directed not to look to whether a differential is specifically job-related, but whether regardless of its "job-relatedness," it is attributable to sex discrimination.[5]

---

> how sex-based wage discrimination litigation under Title VII should be structured to accommodate the fourth affirmative defense of the Equal Pay Act, see n. 8, *supra*, we consider it clear that the Bennett Amendment, under this interpretation, is not rendered superfluous.

*Washington Cty.*, 452 U.S. at 170–71 (footnote omitted).

[5] This conclusion is further supported by a footnote in the Court's decision, which states:

> The legislative history of the Equal Pay Act was examined by this Court in *Corning Glass Works v. Brennan*, 417 U.S. 188, 198-201, 94 S. Ct. 2223, 2229-2231, 41 L. Ed.2d 1 (1974). The Court observed that earlier versions of the Equal Pay bill were

### III

I agree that based on the history of pay discrimination and the broad purpose of the Equal Pay Act, prior salary by itself is not inherently a "factor other than sex." As the Eleventh Circuit noted, "if prior salary alone were a justification, the exception would swallow up the rule and inequality in pay among genders would be perpetuated." *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995). However, the Eleventh Circuit continued:

> an Equal Pay Act defendant may successfully raise the affirmative defense of "any other factor other than sex" if he proves that he relied on prior salary and experience in setting a "new" employee's salary. While an employer may not overcome the burden of proof on the affirmative defense of relying on

amended to define equal work and to add the fourth affirmative defense because of a concern that bona fide job-evaluation systems used by American businesses would otherwise be disrupted. *Id.*, at 199-201, 94 S. Ct., at 2230-2231. This concern is evident in the remarks of many legislators. Representative Griffin, for example, explained that the fourth affirmative defense is a "broad principle," which "makes clear and explicitly states that a differential based on any factor or factors other than sex would not violate this legislation." 109 Cong.Rec. 9203 (1963). See also *id.*, at 9196 (remarks of Rep. Frelinghuysen); *id.*, at 9197-9198 (remarks of Rep. Griffin); *ibid.*, (remarks of Rep. Thompson); *id.*, at 9198 (remarks of Rep. Goodell); *id.*, at 9202 (remarks of Rep. Kelly); *id.*, at 9209 (remarks of Rep. Goodell); *id.*, at 9217 (remarks of Reps. Pucinski and Thompson).

*Washington Cty.*, 452 U.S. at 170 n.11.

"any other factor other than sex" by resting on prior pay alone, as the district court correctly found, there is no prohibition on utilizing prior pay as part of a mixed-motive, such as prior pay and more experience. This court has not held that prior salary can never be used by an employer to establish pay, just that such a justification cannot solely carry the affirmative defense.

*Id*.

Many of our sister circuits are in accord. The Tenth Circuit has held that "an individual's former salary can be considered in determining whether pay disparity is based on a factor other than sex," but that "the EPA 'precludes an employer from relying solely upon a prior salary to justify pay disparity.'" *Riser*, 776 F.3d at 1199 (citing *Angove v. Williams–Sonoma, Inc.*, 70 Fed. Appx. 500, 508 (10th Cir. 2003) (unpublished)). The Second and Sixth Circuits are basically in agreement. *See Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992) (recognizing "that job classification systems may qualify under the factor-other than-sex defense only when they are based on legitimate business-related considerations"); *EEOC v. J.C. Penney Co. Inc.*, 843 F.2d 249, 253 (6th Cir. 1988) (holding that "the legitimate business record standard is the appropriate benchmark against which to measure the 'factor other than sex'").[6]

---

[6] The Seventh and Eighth Circuits prefer an even broader definition for "factor other than sex." *Covington v. S. Ill. Univ.*, 816 F.2d 317, 321–22 (7th Cir. 1987) (holding that the EPA does not preclude "an employer from carrying out a policy which, although not based on employee

This approach reflects that the fourth exception was intended to be, and is, broad. Thus, while a pay system that relied exclusively on prior salary is conclusively presumed to be gender based—to perpetuate gender based inequality—a pay system that uses prior pay as one of several factors deserves to be considered on its own merits. When a plaintiff makes a prima facie case of pay inequality based on gender, the burden of showing that the difference is not based on gender shifts to the employer. In other words, the prima facie case creates a presumption that the pay inequality arising from the employer's pay system is gender based and hence is not a "factor other than sex." In *Corning Glass*, the Supreme Court explained that the Equal Pay Act's

> structure and history also suggest that once the Secretary has carried his burden of showing that the employer pays workers of one sex more than workers of the opposite sex for equal work, the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions.

*Corning Glass*, 417 U.S. at 196; *see also Maxwell v. City of Tucson*, 803 F.2d 444, 445–46 (9th Cir. 1986) (stating that once the plaintiff establishes a prima facie case, "the burden shifts to the employer to show that the wage disparity is permitted by one of the four statutory exceptions to the Equal

---

performance, has in no way been shown to undermine the goals of the EPA"); *Taylor v. White*, 312 F.3d 710, 720 (8th Cir. 2003) (stating that "a case-by-case analysis of reliance on prior salary or salary retention policies with careful attention to alleged gender-based practices preserves the business freedoms Congress intended to protect when it adopted the catch-all 'factor other than sex' affirmative defense").

Pay Act"). There is no justification for holding that an employer could, as a matter of law, justify the differential under one of the first three exceptions, but not the fourth exception. Accordingly, I differ from the majority in that I think, as do the majority of our sister circuits, that when salary is established based on a multi-factor salary system that includes prior salary, the presumption that the system is based on gender is rebuttable.[7]

This is also the position of the EEOC, the agency charged with enforcing the EPA. In its amicus brief, the EEOC states that in its view because prior salaries "can reflect sex-based compensation discrimination," a prior salary "cannot by itself justify a compensation disparity," but "an employer may consider prior salary as part of a mix of factors."[8] That seems a reasonable approach to a multi-faceted decision to formulate a rate of pay.

---

[7] I agree with the majority that the market force theory for paying women less was discredited by the Supreme Court in *Corning Glass*, 417 U.S. at 205, and that the notion that an employer may pay women less because women allegedly cost more to employ than men was discredited in *City of Los Angeles, Department of Water & Power v. Manhart*, 435 U.S. 702 (1978). *See* Majority Opinion at 25–27.

[8] In EEOC Notice Number 915.002 (Oct. 29, 1997), "Enforcement Guidance on Sex Discrimination in the Compensation of Sports Coaches in Educational Institutions," the EEOC advised:

> Thus, if the employer asserts prior salary as a factor other than sex, evidence should be obtained as to whether the employer: 1) consulted with the employee's previous employer to determine the basis for the employee's starting and final salaries; 2) determined that the prior salary was an accurate indication of the employee's ability based on education, experience, or other relevant factors; and

In sum, I note that "prior pay" is not inherently a reflection of gender discrimination. Differences in prior pay may well be based on other factors such as the cost of living in different parts of our country. Also, it is possible, and we hope in this day probable, that the prior employer had adjusted its pay system to be gender neutral. Nonetheless, consistent with the intent of the EPA, I agree that where prior pay is the exclusive determinant of pay, the employer cannot carry its burden of showing that it is a "factor other than sex."[9] However, neither Congress's intent, nor the language of the Equal Pay Act, nor logic, requires, or justifies, the conclusion that a pay system that includes prior pay as one of several ingredients can never be a "factor other than sex," and thus fails to come within the fourth exception to the Equal Pay Act.

IV

In this case, the County based pay only on prior salary, and accordingly the district court properly denied it

3) considered the prior salary, but did not rely solely on it in setting the employee's current salary.

[9] We read the EPA to place the burden on the employer to demonstrate that the pay differential falls within the fourth exception; that it is indeed not based on gender. An employer cannot meet this burden where the pay system is based solely on prior pay because by blindly accepting the prior pay, it cannot rebut the presumption that using the prior pay perpetuates the inequality of pay based on gender that the EPA seeks to correct. If, instead, as suggested by the EEOC's Notice Number 915.002, an employer not only looked to prior pay but also researched whether the applicant's prior pay reflected gender based inequality, and made adjustments if it did, the employer would no longer be relying exclusively on prior pay. Thus, in such a situation, an employer might be able to overcome the presumption and show that its pay system was a "factor other than sex."

summary judgment. Nonetheless, the majority unnecessarily, incorrectly, and contrary to Supreme Court precedent, insists that prior salary can never be a factor in a pay system that falls within the fourth exception to the Equal Pay Act. Accordingly, I concur separately because following the Supreme Court's guidance, I agree with the Tenth and Eleventh Circuits, as well as the EEOC, the agency charged with enforcing the EPA, that prior pay may be a component of a pay system that comes within the fourth exception recognized in 29 U.S.C. § 206(d)(1). A defense to a pay discrimination claim will lie if the employer meets its burden of showing that its system does not perpetuate or create a pay differential based on sex. We should not have reached out to hold otherwise, particularly as there was no need to do so.[10]

For these reasons, I concur in the result, but not the majority's rationale.

WATFORD, Circuit Judge, concurring in the judgment:

I agree with the result the majority reaches, but I arrive there through a somewhat different reading of the statute.

The Equal Pay Act prohibits employers from discriminating "on the basis of sex" by paying female

---

[10] The majority's assertion that it expresses a "general rule" and does not "attempt to resolve its application under all circumstances" (Majority Opinion at 14) is at odds with its conclusion that past salary cannot be considered "alone or in conjunction with less invidious factors." Majority Opinion at 29. As Judge McKeown notes in her separate concurrence, the "disclaimer hardly cushions the practical effect of its 'general rule.'" McKeown Concurrence at 37.

employees less than their male counterparts for doing the same work. 29 U.S.C. § 206(d)(1). The Act allows an employer to justify such a pay disparity by proving, as an affirmative defense, that the disparity is based on a "factor other than sex." *Id.*; *see Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974). In my view, past pay can constitute a "factor other than sex," but only if an employee's past pay is not itself a reflection of sex discrimination. If past pay does reflect sex discrimination, an employer cannot rely on it to justify a pay disparity, whether the employer considers past pay alone or in combination with other factors. I agree with the majority that holding otherwise would permit employers to perpetuate the very form of sex discrimination the Act was intended to outlaw.

This reading of § 206(d)(1) aligns with the Supreme Court's interpretation of the same provision in *Corning Glass*. There, Corning Glass had for many years paid female day-shift inspectors less than male night-shift inspectors, even though both sets of inspectors performed the same work. The company argued that this pay disparity was simply the result of prevailing market forces, which allowed men to demand and receive higher wages than women. The Court rejected that argument and held that the disparity nonetheless violated the Act's requirement of "equal pay for equal work." 417 U.S. at 205.

The Court also rejected the company's attempt to defend its new pay system, which eliminated the pay disparity going forward. Beginning in January 1969, all newly hired inspectors would be paid the same wage regardless of shift. The company set the new, uniform wage at an hourly rate above what the day-shift inspectors had been earning but below what the night-shift inspectors made. Existing

employees would be paid the new, uniform wage as well, unless they had been earning more beforehand. That meant existing day-shift inspectors got a raise (to the new, uniform wage), but existing night-shift inspectors got to retain their previous, higher wage. *Id.* at 194, 208–09 & n.29. The Supreme Court held that the resulting pay disparity between female day-shift and male night-shift inspectors' wages was illegal: Although the disparity was attributable to a "neutral factor other than sex"—namely, past pay—the employer could not avail itself of the affirmative defense because an employee's past pay in this instance reflected sex discrimination. *Id.* at 209–10. Holding otherwise, the Court noted, would "perpetuate the effects of the company's prior illegal practice of paying women less than men for equal work." *Id*.

I think the same analysis should govern even when an employer's prior pay practices are not overtly discriminatory, as they were in *Corning Glass*. If an employer seeks to justify paying women less than men by relying on past pay, it bears the burden of proving that its female employees' past pay is not tainted by sex discrimination, including discriminatory pay differentials attributable to prevailing market forces. *See id.* at 205. Unfortunately, even today, in most instances that will be exceedingly difficult to do. Despite progress in closing the wage gap, gender pay disparities persist in virtually every sector of the American economy, with women today earning on average only about 82% of what men make, even after controlling for education, work experience, and other factors. *See* Francine D. Blau & Lawrence M. Kahn, *The Gender Wage Gap: Extent, Trends, and Explanations*, 55 J. Econ. Literature 789, 797–800 (2017). It therefore remains highly likely that a woman's past pay will reflect, at least in part, some form of sex discrimination. As a result,

an employer will rarely be able to justify a gender pay disparity by relying on the fact that a female employee made less than her male counterparts at her prior job.

The employer in this case failed to prove that Aileen Rizo's past pay is not tainted by sex discrimination. Her prior salary thus cannot be deemed a "factor other than sex." For that reason, I agree that the district court properly denied the County's motion for summary judgment.